971 So.2d 1104 (2007)
Jamie HENLY
v.
PHILLIPS ABITA LUMBER CO., Inc., et al.
No. 2006 CA 1856.
Court of Appeal of Louisiana, First Circuit.
October 3, 2007.
*1106 Thomas Kelffer, Sr., Covington, LA, and Phillip M. Lynch, Jr., Mandeville, LA, for Defendant & Third-Party Plaintiff/Appellant Phillips Abita Lumber Co., Inc.
Ralph S. Hubbard, III, Lourdes Estevez Martinez, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Defendant & Third-Party Defendant/Appellee Travelers Property Casualty Co. of America.
Before PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
Phillips Abita Lumber Company, Inc. (Abita) appeals a judgment denying its motion for partial summary judgment and granting summary judgment in favor of Travelers Property Casualty Company of America (Travelers). The judgment in favor of Travelers dismissed Abita's claims that Travelers owed it insurance coverage and a defense for the acts alleged in the petition of Jamie Henly (Henly) against Jeffrey Bruce (Bruce) and his employer, Abita. We affirm the judgment.

BACKGROUND
According to Henly's petition against Bruce and Abita in this matter, she and Bruce were both employed by Abita. Bruce had recruited Henly for her position as a shipping clerk and was her immediate supervisor. Henly claims that on one occasion when she was riding to work with Bruce, he pulled off the main road, exposed himself to her, and solicited her for *1107 sexual activity.[1] She further alleges that Bruce, a management employee, continually bothered her while both were at work at the Abita site by improper touching, solicitations, and sexual comments. When she rebuffed his unwelcome advances, he threatened her with the loss of her job, hollered at her, threw chairs, and on one occasion, pushed or kicked her in the back, forcing her forward into a wall and causing a lower back injury that eventually required surgery.[2]
Henly claims many of these actions were witnessed by other employees of Abita and constituted assault and battery, sexual harassment, unlawful violence against women, and intentional infliction of emotional distress. She further alleges that Abita is vicariously liable for Bruce's acts, because he was in the course and scope of his employment when these incidents occurred. Therefore, she claims Bruce and Abita are solidarity liable for her damages, including past and future medical bills, loss of enjoyment of life, emotional distress/mental anguish, loss of range of motion, future loss of wages and/or earning capacity, past lost wages due to surgery and recuperation, and other general and equitable relief.
Henly also claims that in addition to its vicarious liability for Bruce's actions, Abita is individually liable for actively discouraging her from filing a workers' compensation claim after her injury, demoting her to cashier, reducing her working hours, replacing her as shipping clerk with a male employee, and harassing her to the point that she was forced to resign. These acts form the basis of Henly's claims of sex discrimination and retaliation for filing a workers' compensation claim. In addition to the previously listed items of damages for Abita's vicarious liability for Bruce's actions, Henly seeks punitive damages, attorney fees, and costs from Abita for its independent liability.
Abita filed a third-party demand against Travelers, seeking insurance coverage under its commercial general liability policy, as well as a defense, to Henly's claims against it and reimbursement of litigation expenses already incurred. Travelers filed an answer denying coverage and a duty to defend on the basis of exclusions in the policy, including the workers' compensation exclusion, the "bodily injury to an employee" exclusion, the employment-related practices exclusion, and the discrimination exclusion. Abita filed a motion for partial summary judgment against Travelers, seeking a judgment declaring that Travelers owed It a duty to defend the claims asserted against it by Henly in this case, compelling Travelers to provide that defense, and awarding damages sufficient to reimburse Abita for the attorney fees and other litigation costs it had incurred in defending itself in this lawsuit. Travelers filed a cross-motion for summary judgment on both the coverage and defense issues. After a hearing, the district court granted Travelers' motion as to both coverage and defense and denied Abita's motion, stating in written reasons for judgment that "the Travelers policy clearly and unambiguously excludes coverage for the acts alleged in the petition of . . . Henly" and "Travelers does not have a duty to defend . . . [Abita] against the allegations . . . [of] Henly."
Abita appealed, claiming the district court erred in ruling that Travelers has no duty to defend it, and further erred in denying Abita's request for reimbursement of defense costs. Abita contends it had *1108 "possible liability," based on the allegations of Henly's petition concerning one particular incident, and therefore, Travelers is required to provide it with a defense and pay its defense costs, including attorney fees.

APPLICABLE LAW
Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages. See LSA-C.C.P. art. 966(E); Bilbo for Basnaw v. Shelter Ins. Co., 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, 694, writ denied. 97-2198 (La.11/21/97), 703 So.2d 1312. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. When the issue before the court on the motion for summary judgment is one on which the party bringing the motion will bear the burden of proof at trial, the burden of showing there is no genuine issue of material fact remains with the party bringing the motion. See LSA-C.C.P. art. 966(C)(2); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. An insurer seeking to avoid coverage through summary judgment bears the burden of proving some provision or exclusion applies to preclude coverage. See Simmons v. Weiymann, 05-1128 (La.App. 1st Cir.8/23/06), 943 So.2d 423, 425.
Insurance Policy Interpretation
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. See LSA-C.C. art.2045; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763. If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046. The court should not strain to find ambiguity where none exists. Strickland v. State Farm Ins. Cos., 607 So.2d 769, 772 (La.App. 1st Cir.1992).
However, if there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions. See LSA-C.C. art.2050; Louisiana Ins. Guar. Ass'n, 630 So.2d at 763. Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. Breland v. Schilling, 550 So.2d 609, 610-11 (La.1989). If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of coverage for the *1109 insured. See LSA-C.C. art.2056; Louisiana Ins. Guar. Ass'n, 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. Huggins v. Gerry Lane Enterprises, Inc., 05-2665 (La.App. 1st Cir.11/3/06), 950 So.2d 750, 754, aff'd, 06-2816 (La.5/22/07), 957 So.2d 127.
Duty to Defend
Generally, the insurer's obligation to defend suits against its insured is broader than its obligation to indemnify for damage claims. Yount v. Maisano, 627 So.2d 148, 153 (La.1993). The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291 (La.App. 1st Cir.3/28/01), 785 So.2d 79, 84, writ denied, 01-1551 (La.10/5/01), 798 So.2d 969. The insurer's duty to defend suits brought against its insured is determined by the factual allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless it is clear from the petition that the policy unambiguously excludes coverage. See Yount, 627 So.2d at 153. Even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single factual allegation in the petition under which coverage is not unambiguously excluded. Motorola, Inc. v. Associated Indem. Corp., 02-0716 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 836, writs denied, 04-2314, 2323, 2326, and 2327 (La.11/19/04), 888 So.2d 207, 211, and 212. Thus, assuming the factual allegations of the petition are true, if there could be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Prestage v. Clark, 97-0524 (La.App. 1st Cir.12/28/98), 723 So.2d 1086, 1092, writ denied, 99-0234 (La.3/26/99), 739 So.2d 800. Additionally, the factual allegations of the petition are to be liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. Motorola, 878 So.2d at 836; Yount, 627 So.2d at 153.

ANALYSIS
In addition to determining that Travelers had no duty to defend Abita against Henly's claims, the district court also concluded there was no coverage under the policy and dismissed all of Abita's third-party claims against Travelers. Abita appealed only the duty to defend decision and did not appeal the coverage issue. Therefore, the district court's judgment on the coverage issue is final.
In this appeal, Abita concedes that the Travelers policy unambiguously excluded coverage for all except one of Henly's claims. However, Abita contends the policy did not unambiguously exclude coverage for the "exposing incident" that allegedly occurred while Henly was riding to work with Bruce. Abita argues that at the time of this incident, Bruce was acting within the course and scope of his employment, but Henly, who was on her way to work, was obviously not at work during this occurrence. Abita claims the allegations of assault and battery based on this incident fall within the policy coverage for bodily injury caused by an occurrence, since this incident took place within the policy period and in the coverage territory. In addition, Abita argues that since Henly was not at work when this occurred the policy exclusions do not clearly and unambiguously *1110 apply to this allegation, leaving Abita with potential liability for Bruce's off-site actions.
Travelers' duty to defend the suit brought against Abita is determined by the factual allegations of Henly's petition. Even if, as in this case, the court concludes there is no coverage available under the policy for any of the plaintiffs claims, if the petition alleges even one set of facts that, if proven to be true, would entitle the insured to coverage, then the insurer owes a duty of defense to its insured. See Yount, 627 So.2d at 153 (the court's holding that the intentional injury exclusion applied to preclude coverage did not pretermit the question of whether the insurer owed its insured a defense; because it was not clear from the face of the petition alone whether the resulting injuries to the plaintiff were intended by the insured or whether he knew they were substantially certain to result, the insurer did owe its insured a defense to the claims).
Accordingly, the first step in reviewing this issue is to examine the petition to see what Henly alleged concerning this particular incident. The "exposing incident" was first mentioned in several paragraphs of Henly's first amended petition, as follows:
6.
On one occasion defendant Bruce while driving plaintiff to work, pulled off the main road and exposed himself and solicited her. Plaintiff ceased accepting rides with him and drove herself to work.
8.
Upon information and belief, some of defendant Bruce's actions were witnessed by other employees of defendant Phillips Abita Lumber Co., Inc. All of these actions occurred at the work site during normal work hours with the exception of the exposing incident.
19.
At all times, defendant Bruce's assault(s) and battery(s) of plaintiff occurred during work time on work premises and while defendant Bruce was in the course and scope of his employment for defendant Phillips Abita Lumber Co., Inc. (with the exception of the exposure incident which occurred offsite but on the way to work).
27.
Defendant Bruce's actions n touching, groping, pushing, exposing himself, kicking and [manhandling] plaintiff constituted the tort of assault and battery for which defendant Bruce is personally liable.
28.
As defendant Bruce was in the course and scope of his employment when engaging in these torts, defendant Phillips Abita Lumber Co., Inc. is liable in solido with defendant Bruce for the damages plaintiff sustained.
29.
The damages plaintiff sustained as a result of the assault(s) and battery(s) for which defendants are liable in solido include but are not limited to:
(a) current and future medicals;
(b) loss of enjoyment of life;
(c) emotional distress/mental anguish;
(d) loss of range of motion;
(e) future loss of wages and/or earning capacity;
(f) lost wages due to surgery and recuperation; and
(g) other general and equitable relief.
*1111 These allegations were reiterated in Henly's second amended petition.
The pertinent portions of the commercial general liability coverage form of the Travelers policy state the following:
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations,[3] and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.
The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).
* * *
SECTION I COVERAGES
COVERAGE A. BODILY INJURY . . . LIABILITY
1. Insuring agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
* * *
b. This insurance applies to "bodily injury" . . . only if:
(1) The "bodily injury" . . . is caused by an "occurrence" that takes place In the "coverage territory"; and
(2) The "bodily injury" . . . occurs during the policy period.
* * *
2. Exclusions.
This insurance does not apply to:
a. Expected or Intended Injury
"Bodily injury" . . . expected or intended from the standpoint of the insured.
* * *
d. Workers Compensation and Similar Laws
Any obligation of the insured under a workers compensation . . . law or any similar law.
e. Employer's Liability
"Bodily Injury" to:
(1) An "employee" of the insured arising out of and in the course of:
(a) Employment by the insured; or
(b) Performing duties related to the conduct of the insured's business. . . .
* * *
COVERAGE C. MEDICAL PAYMENTS
1. Insuring Agreement.
a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
(1) On premises you own or rent;
(2) On ways next to premises you own or rent; or
(3) Because of your operations . . . [.]
* * *
2. Exclusions.
We will not pay expenses for "bodily injury":
a. To any insured.
b. To a person hired to do work for or on behalf of any insured

*1112 * * *
d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation . . . law or a similar law.
* * *
g. Excluded under Coverage A.[4]
* * *
SECTION II WHO IS AN INSURED
* * *
2. Each of the following is also an insured:
a. Your "employees," . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:
(1) "Bodily injury" . . . :
(a) To . . . a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business[.]
* * *
SECTION V DEFINITIONS
* * *
3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
4. "Coverage territory" means:
a. The United States of America. . . .
* * *
5. "Employee" includes a "leased worker."
* * *
12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
We must examine the factual allegations concerning the "exposing incident" to determine whether, assuming those facts are true, the Travelers policy unambiguously excluded coverage for this occurrence. The Insuring agreement obligates Travelers to pay any sums that Abita becomes legally obligated to pay as damages because of "bodily injury" to which the policy applies, as long as that bodily injury is caused by an occurrence that takes place within the policy period and within the coverage territory. There is no dispute that the "exposing incident" occurred within the policy period and within the coverage territory. Also, since we must accept all of Henly's factual allegations as true, we must assume for these purposes that some kind of bodily injury was attributable to that incident.
However, the initial inquiry must be whether Abita could be legally obligated to pay damages to her as a result of that incident. Henly has alleged Abita is vicariously liable for the actions of its employee, Bruce. Vicarious liability in Louisiana is based on Louisiana Civil Code *1113 article 2320, which states, in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Under this article, liability extends only to the employee's tortious conduct that is within the course and scope of the employment. Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224, 226. The specific inquiry in determining whether an employee is within the course and scope of his employment is whether the employee's tortious conduct is so closely connected in time, place, and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. Weatherford v. Commercial Union Ins. Co., 93-0841 (La.App. 1st Cir.5/20/94), 637 So.2d 1208, 1211, aff'd 94-1793 (La.2/20/95), 650 So.2d 763. Stated another way, an employee is acting within the course and scope of his employment when the employee's action is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. Orgeron, 639 So.2d at 226-27. In LeBrane v. Lewis, the supreme court summarized some of the factors to use in this inquiry, including whether the tortious act was primarily employment rooted, whether the act was reasonably incidental to the performance of the employee's duties, whether the act occurred on the employer's premises, and whether it occurred during the hours of employment. See LeBrane v. Lewis, 292 So.2d 216, 218 n. 4 and 219 (La.1974). An employee may be within the course and scope of his employment, yet step out of that realm while engaging in a personal mission. Timmons v. Silman, 99-3264 (La.5/16/00), 761 So.2d 507, 510.
It is clear from Henly's factual allegations concerning the "exposing incident" that it did not occur on Abita's premises and did not occur during work hours. Bruce and Henly were on their way to work. An employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Orgeron, 639 So.2d at 227. There are no factual allegations in Henly's petition to indicate that the drive to work included any employment-related duties for either of them. More importantly, Bruce's actions that were the basis of Henly's claims had nothing to do with the kind of activities he was employed to perform for Abita, and could hardly be said to have been motivated, even in part, by a purpose to serve his employer. Even if Bruce and Henly had been on an employment-related errand, Bruce clearly deviated from any such errand when he pulled off the road, exposed himself to Henly, and solicited sexual activity. Bruce's improper sexual conduct at this time was certainly not so closely connected in time, place, and causation to his employment duties with Abita that it could be regarded as a risk of harm fairly attributable to Abita's business. By these actions, Bruce was engaged in a purely personal mission entirely extraneous to his employment with Abita.
No matter how liberally this court interprets Henly's factual allegations concerning this occurrence, those statements do not bring the exposing incident within the course and scope of Bruce's employment. *1114 If Bruce was not in the course and scope of his employment when the exposing incident occurred, then Abita could not be vicariously liable under Louisiana law. See Busby v. St. Paul Ins. Co., 95-2128 (La.App. 1st Cir.5/10/96), 673 So.2d 320, 331, writ denied, 96-1519 (La.9/20/96), 679 So.2d 443. And unless Abita could have been liable to pay damages for this particular interaction between Bruce and Henly, Travelers could not become obligated to pay under the insuring agreement of its policy.
We also reject Abita's argument that there was potential coverage under the policy because Henly alleged that when the exposing incident occurred, she was outside the course and scope of her employment, because she was on the way to work, while Bruce was acting within the course and scope of his employment when all of the sexual improprieties, including this incident, occurred. Henly's factual allegations concerning the exposing incident place them both in the same activity of riding to work, therefore, either both were within the course and scope of their employment or both were outside of that status. There are no factual statements that would justify any differentiation between them during the exposing incident or any of the other incidents that occurred at the Abita work site and during working hours. Based on the facts provided in Henly's petition, neither Henly nor Bruce were in the course and scope of their employment during the exposing incident; during the other actions, they were both at work and were in the course and scope of their employment with Abita. It is the allegations of fact contained in the petition, and not the conclusions, that determine the obligation to defend. Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc., 611 So.2d 158, 160-61 (La.App. 3rd Cir.1992). Accordingly, we find no legal error in the district court's decision to deny Abita's motion for partial summary judgment on the duty to defend issue and to grant Travelers' motion for summary judgment on both the coverage and defense issues.

CONCLUSION
For the stated reasons, we affirm the judgment of May 8, 2006, dismissing all coverage and defense claims against Travelers. Costs of this appeal are assessed to Abita.
AFFIRMED.
NOTES
[1] Henly stated that after this incident, she ceased accepting rides with Bruce.
[2] Bruce was eventually fired by Abita.
[3] Abita is the only named insured under the policy.
[4] In addition to these exclusions, an endorsement entitled "Employment-Related Practices Exclusion" excluded coverage for bodily injury to any person arising out of the termination of that person's employment or employment-related practices, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination directed at that person. Another endorsement entitled "Exclusion  Discrimination" excluded coverage for bodily Injury resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon, among other things, a person's sex.