WAYNE TRICHE
v.
ST. PAUL GUARDIAN INSURANCE COMPANY
No. 2009 CA 0612.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
CLAUDE F. REYNAUD, JR., STEPHEN F. CHICCARELLI, ERIC B. LANDRY, Attorneys for Plaintiff-Appellant Wayne Triche
MICHAEL D. HUNT, JANE H. BARNEY, Attorneys for Defendant-Appellee St. Paul Guardian Ins. Co.
Before: WHIPPLE, HUGHES, and WELCH, JJ.
WELCH, J.
Plaintiff, Wayne Triche, appeals a summary judgment entered in favor of defendant, St. Paul Guardian Insurance Company (St. Paul), which determined that the insurer did not have a duty to defend and indemnify Mr. Triche in the underlying litigation. We affirm.

BACKGROUND
On January 10, 2007, Raymond Heck, Doug Hamley, Charles Moore, Joseph McKearn, and Allen Richardson (referred to collectively as the "Heck plaintiffs") filed a lawsuit in federal court against Mr. Triche and Kenneth Buhler. Therein, they alleged that Mr. Triche and Mr. Buhler conspired and participated in fraudulent conduct in order to induce them to loan Mr. Buhler and his business, Antiques Investment Group, LLC (AIG), approximately $335,000.00 in the form of investment contracts. The lawsuit alleged that in late 2003, Mr. Triche and Mr. Buhler began soliciting investments to create an inventory of antiques and other collectibles for resale. They charged that Mr. Triche drafted a prospectus used to solicit the investments and made various misrepresentations designed to impress prospective investors with Mr. Buhler's financial success in the antiques business, even though Mr. Triche, who had been Mr. Buhler's accountant for years, was actually aware that Mr. Buhler was experiencing severe financial difficulties. The Heck plaintiffs charged that Mr. Triche and Mr. Buhler violated Section 10(b) of the Securities Exchange Act of 1934 and Title 51, Section 712A (2) of the Louisiana Securities Laws by engaging in a conspiracy by offering and selling securities to them through the use of schemes, omissions, and misrepresentations designed to deceive them into purchasing the investment contracts. They also asserted causes of action for negligent misrepresentation and conversion under La. C.C. arts. 2315 and 2316, a claim for breach of contract under La. C.C. art. 1758, and a claim for fraudulent misrepresentation under La. C.C. art. 1953.
On August 30, 2007, Mr. Triche filed this lawsuit against St. Paul, seeking a judgment declaring that St. Paul owed a duty to defend and indemnify him in the Heck litigation. St. Paul issued an Accountants Professional Liability Policy to Triche & Associates, LLC, providing coverage for damages arising out of an error, omission, negligent act, or personal injury in the rendering or failure to render "professional accounting services." St. Paul answered and denied that its policy obligated it to defend or indemnify Mr. Triche in the Heck litigation. St. Paul denied coverage on the basis that the damages did not arise out of a failure to render "professional accounting services" as defined in the policy. St. Paul also claimed that various policy exclusions precluded coverage for the Heck plaintiffs' claims including: (1) Exclusion H, which bars coverage for those claims arising out of the promotion, sale, or solicitation of securities or investments by an insured; (2) the Securities Practice Exclusion, which bars claims arising out of alleged violations of the Securities Exchange Act of 1934 and the Louisiana "Blue Sky Law" and those causes of action based upon common law principles of liability made in connection with the alleged violations of securities statutes; and (3) Exclusion A, which bars coverage for claims arising out the alleged dishonest, fraudulent, malicious acts committed by, at the direction of, or with the knowledge of the insured.
St. Paul filed a motion for summary judgment, asserting that it has no duty to defend or indemnify Mr. Triche in the Heck litigation because the allegations therein did not fall within coverage of the policy issued to Mr. Triche's accounting firm. It also argued that all of the claims in the Heck lawsuit arose out of alleged violations of securities laws and the alleged sale of securities, which the policy specifically excluded from coverage. Mr. Triche also filed a motion for summary judgment on the duty to defend and coverage issues, urging that not all claims in the Heck litigation arose directly or indirectly out of actual or alleged violations of securities laws. He claimed that the allegations referring to Mr. Triche's role as the accountant to provide oversight of the business triggered coverage of the policy.
The trial court denied Mr. Triche's motion for summary judgment and granted St. Paul's motion for summary judgment, finding that St. Paul has no duty to defend or indemnify Mr. Triche in connection with the Heck litigation. With respect to the duty to defend, the trial court examined the allegations contained in the Heck petition and the provisions of the St. Paul policy, and concluded that all of the causes of action asserted therein, whether based on violations of the securities laws or the Louisiana Civil Code, arose out of the alleged solicitation and sale of the investment contracts. None of the claims, the court concluded, arose out of the rendering or failure to render professional accounting services; and therefore, St. Paul had no duty to defend Mr. Triche in the Heck litigation. From this judgment, Mr. Triche appeals.

SUMMARY JUDGMENT
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Henly v. Phillips Abita Lumber Co., XXXX-XXXX, p. 4 (La. App. 1st Cir. 10/3/07), 971 So.2d 1104, 1108. Summary judgment shall be rendered if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The central issue presented in the parties' motions for summary judgment and on this appeal is whether St. Paul has an obligation to defend Mr. Triche in the Heck litigation. The scope of an insurer's duty to defend is examined under the "eight-corners rule," pursuant to which only the four corners of the plaintiff's petition and the four corners of the insurance policy are examined. Henly, XXXX-XXXX at p. 5, 971 So.2d at 1109. Because the scope of the insurer's duty to defend presents an issue of law, summary judgment is an appropriate procedural vehicle to decide the issue presented in this litigation.

DUTY TO DEFEND
The duty to defend and coverage are separate and distinct issues. Dennis v. Finish Line, Inc., 93-0638 (La. App. 1st Cir. 3/11/94), 636 So.2d 944, 946, writ denied, 94-1652 (La. 10/7/94), 644 So.2d 636. The insurer's obligation to defend suits against its insured is broader than its liability for damage claims. An insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. Treadway v. Vaughn, 633 So.2d 626, 627 (La. App. 1st Cir. 1993), writ denied, 94-0293 (La. 3/25/94), 635 So.2d 233. The duty to defend is determined by the allegations of the plaintiffs petition, which must be interpreted liberally in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the lawsuit brought against its insured. Treadway, 633 So.2d at 627-628. Where the pleadings disclose "even a possibility" of liability under a contract of insurance, the duty to defend is triggered. Suire v. Lafayette City-Parish Consolidated Government, XXXX-XXXX, p. 18 (La. 4/12/05), 907 So.2d 37, 52.
Even though a plaintiffs petition may allege numerous claims for which coverage is excluded under an insurance policy, a duty to defend may nonetheless exist if there is at least a single factual allegation in the petition under which coverage is not unambiguously excluded. Henly, XXXX-XXXX at pp. 5-6, 971 So.2d at 1109; Treadway, 633 So.2d at 628. It is this principle of law upon which Mr. Triche centers his challenge to the trial court's granting of St. Paul's motion for summary judgment.

POLICY PROVISIONS
St. Paul issued an Accountants Professional Liability policy to Mr. Triche's accounting firm. In the policy, St. Paul agreed to pay on behalf of its insured damages which "arise out of an error, omission, negligent act or `personal injury' in the rendering of or failure to render `professional accounting services' for others" by the insured. The policy defines "professional accounting services" as "services performed or advice given by you or on your behalf for others in the conduct of your practice as an accountant."
The St. Paul policy also contains two specific exclusions for claims based on securities. The first is entitled "Securities Practice Exclusion." Paragraph A of that exclusion provides that the policy does not apply to damages arising out of an actual or alleged violation of the Securities Exchange Act of 1934 or any state "Blue Sky" law or any rules, regulations or amendments issued in relation to such acts. Paragraph B of the exclusion provides that the insurance does not apply to any damages based upon common law principles of liability if made in connection with an actual or alleged violation of any law listed in Paragraph A. Paragraph H, found in the exclusion section of the St. Paul policy, provides that the insurance does not apply to claims "[a]rising out of: [t]he promotion, sale or solicitation for sale of securities, real estate, or other investments by an insured."

ALLEGATIONS IN THE HECK PLAINTIFFS' PETITION
Looking now to the allegations in the underlying litigation, in their original and amended petitions, the Heck plaintiffs alleged that Mr. Triche and Mr. Buhler conspired to defraud them in connection with the sale of securities, inducing them to purchase investment contracts through misrepresentations, omissions of act and other artifices. The Heck plaintiffs made the following allegations: Mr. Triche had been Mr. Buhler's accountant since 1991, handling both Mr. Buhler's personal and business finances. After Mr. Buhler was fired from his job with "Go Antiques," Mr. Triche advised Mr. Buhler that he needed capital to get back into the antiques business. In an attempt to raise large amounts of money, Mr. Triche wrote a prospectus to solicit funds from prospective investors. In the prospectus, Mr. Triche represented that: participation would be open to a limited number of investors; the investments were to be in the form of two-year minimum loans made by the investors to entities designated by Triche, including AIG, with the proceeds used to buy inventory pool items; the inventory pool would fully collateralize the loans made by the investors; and Mr. Buhler, who would manage the inventory pool, owned one of the most successful antique and auction houses in the south and had experienced immense success in the antique and auction business. To provide a high level of comfort and security to prospective investors, Mr. Triche represented that a local CPA firm would provide investors with independent accounting and oversight, while Mr. Triche actually owned the local CPA firm that was to provide this oversight. The Heck plaintiffs charged that Mr. Triche knew the representations made in the prospectus were false because he was aware that Mr. Buhler was experiencing severe financial difficulties and had been doing so for the past three years.
The Heck plaintiffs averred that on Mr. Triche's instruction, Mr. Buhler used the money invested by them to pay off his personal and business debts. They insisted that had the independent accounting and oversight been provided as promised, it would have exposed the ongoing fraud being committed by Mr. Buhler and Mr. Triche. Moreover, they charged, despite representing to them that their loans would be secured by the inventory pool purchased with their investments, after the sale of the investment contracts, Mr. Triche and Mr. Buhler quickly granted a security interest in the same inventory to a bank in order to obtain a $350,000.00 revolving line of credit to AIG. After Mr. Buhler and all of his entities defaulted on their loans, the bank seized all of the inventory Mr. Buhler and Mr. Triche had pledged to the Heck plaintiffs in order to obtain their investments. As a result of the bank's seizure and sale of the inventory pool that had been pledged to them, the Heck plaintiffs lost all of their investments.
The Heck plaintiffs alleged that had it not been for Mr. Triche and Mr. Buhler's misrepresentations, they would not have purchased the investment contracts. They asserted numerous causes of action based on Mr. Triche and Mr. Buhler's alleged conspiracy to deceive and defraud them into investing in Mr. Buhler's antique business. They asserted a cause of action for a violation of Section 10(b) of the Securities Exchange Act of 1934 and sought the recission of their investment contracts and the return of their investments pursuant to Section 29(b) of that act. The Heck plaintiffs also asserted numerous causes of action based on Louisiana law, including Louisiana's Securities Law, causes of action under La. C.C. arts. 2315 and 2316 for negligent misrepresentation and conversion, article 1758 for breach of contract, and article 1953 for fraudulent misrepresentation.

DISCUSSION
In this appeal, Mr. Triche argues that the trial court erred in finding St. Paul did not owe a duty to defend and indemnify claims brought against him in the Heck litigation. Mr. Triche submits that the trial court failed to properly analyze each of the claims asserted by the Heck plaintiffs and failed to apply the settled law on the issue of St. Paul's duty to defend, which holds that a single allegation that may potentially require coverage under the policy triggers a duty to defend the entire lawsuit against him. He asserts that there are a number of claims in the federal litigation that are not based on violations of securities laws and the sale of securities and those claims trigger St. Paul's duty to defend and indemnify him.
Mr. Triche first points to the federal court litigants' allegation that he failed to provide independent accounting and oversight of AIG's business operations, which he insists is clearly related to his failure to render "professional accounting services," thereby triggering coverage under the policy. He also claims that the allegation regarding the misappropriation of the funds invested by the Heck plaintiffs is directly related to the claim that he failed to provide proper accounting and oversight, as any duty he may have had to expose the misappropriation could only arise from his role as an accountant. Mr. Triche also argues that there are numerous allegations in the petition which are based on his alleged action or inaction after the sale of the investment contracts, such as his alleged failure to disclose the misappropriation and his alleged conspiracy to grant a security interest in AIG's inventory to another secured creditor, which are acts separate from and unrelated to the sale of any securities. Finally, Mr. Triche urges, the Heck plaintiffs have asserted numerous independent, non-securities state law causes of action, including breach of contract, negligent and fraudulent misrepresentation, and conversion, theories on which he could be found liable for by the federal court even if he were not found liable for violating securities arguments.
St. Paul counters that the trial court correctly determined that it did not have a duty to defend or indemnify Mr. Triche in the Heck lawsuit because the damages do not arise out of acts in the rendering or failure to render "professional accounting services." It urges that the damages sought by the Heck plaintiffs are based on the alleged misrepresentations and other tortious conduct by Mr. Triche in promoting and selling the investments, not out of Mr. Triche's professional accounting services. Additionally, St. Paul argues that the trial court correctly found that the policy does not apply because the Heck lawsuit arises out of Mr. Triche's alleged promotion, sale or solicitation for the sale of securities or other investments.
We agree that Exclusion H precludes coverage on the claims asserted in the Heck lawsuit. An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Henly, XXXX-XXXX at p. 4, 971 So.2d at 1108. If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' intent. Strickland v. State Farm Insurance Companies, 607 So.2d 769, 772 (La. App. 1st Cir. 1992). The St. Paul policy, in Exclusion H, excludes from coverage all claims "[a]rising out of "the promotion, sale or solicitation for sale of securities, real estate, or other investments by any insured." There is no ambiguity in the language of this provision.
All of the allegations in the Heck lawsuit are based on Mr. Triche's alleged sale of investment contracts to the Heck plaintiffs. The Heck plaintiffs claim that Mr. Triche induced them to invest their money in the form of investment contracts through various oral and written misrepresentations regarding the proposed investments, and all of their claims and causes of action arise out of these allegations. The allegations specifically relied on by Mr. Triche as falling outside the scope of Exclusion H are based on and arise out of the solicitation and sale of the investment contracts. The Heck plaintiffs charged that they were induced to purchase the contracts under the misrepresentation that there would be an independent accounting and oversight of AIG's business operations, and had an independent accounting actually been performed, the misuse of their money to pay off Mr. Buhler's personal and business debts, rather than to acquire new inventory, would have been uncovered. This claim arises directly from the alleged solicitation and sale of the investments. Moreover, the allegation that Mr. Buhler and Mr. Triche conspired to grant a security to another secured creditor in AIG's inventory arises directly from the solicitation and sale of the investment contracts, as the Heck plaintiffs claim that they were mislead into purchasing the contracts by the promise that they would have a secured interest in AIG's inventory.
We are mindful that the factual allegations of the petition are to be interpreted liberally in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit against its insured. Henly, XXXX-XXXX at p. 6, 971 So.2d at 1109. However, we find that assuming the facts alleged in the petition are true, the St. Paul policy unambiguously excluded coverage for all claims asserted in the Heck litigation because those claims clearly arise out of Mr. Triche's actions in the solicitation and sale of the investment contracts to them. Accordingly, we find that the trial court correctly granted St. Paul's motion for summary judgment on the duty to defend and coverage issues.

CONCLUSION
For the foregoing reasons, the summary judgment dismissing all defense and coverage claims against St. Paul is affirmed. Costs of this appeal are assessed to Wayne Triche.
AFFIRMED.