# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**20-423**

**BARBARA HOFFPAUIR**

**VERSUS**

**CAJUNDOME COMMISSION, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20182029
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED IN PART AND REVERSED IN PART.**

**Christina A. Culver**
**Thompson, Coe, Cousins & Irons, LLP**
**One Riverway, Suite 1400**
**Houston, TX 77056**
**(713) 403-8210**
**COUNSEL FOR THIRD-PARTY DEFENDANT/APPELLANT:**
     **United States Fire Insurance Company**

**Marne Jones**
**Thompson, Coe, Cousins & Irons, LLP**
**650 Poydras Street, Suite 2105**
**New Orleans, LA 70130**
**(504) 526-4350**
**COUNSEL FOR THIRD-PARTY DEFENDANT/APPELLANT:**
     **United States Fire Insurance Company**

**Michael J. Remondet, Jr.**
**Ted P. Sorrells**
**Jeansonne & Remondet**
**P.O Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANT/THIRD-PARTY PLAINTIFF/APPELLEE:**
     **The Cajundome Commission**

**Anthony M. Fazzio**
**4906 Ambassador Caffery Parkway**
**Building J, Suite 1000**
**Lafayette, LA 70508**
**(337) 406-1122**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Barbara Hoffpauir**

**KYZAR, Judge.**

In this insurance coverage dispute, the third-party defendant, United States Fire Insurance Company, appeals from a trial court judgment denying its motion for partial summary judgment as to its duty to defend a premises-liability suit filed against the third-party plaintiff, the Cajundome Commission. It further appeals a judgment in favor of the Cajundome Commission, finding that it owed a duty to defend and indemnify the Cajundome Commission in the same suit. For the reasons assigned, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

On November 17, 2016, Generation Exodus Foundation (GEF) entered into a license agreement with the Cajundome Commission (the Commission) whereby it was allowed to lease the Cajundome arena in order to host a concert on April 20, 2017. As required by the license agreement, GEF obtained a commercial general liability policy, which named the Commission as an additional insured. The insurance policy, Policy Number SRPGA-101-0716, was issued by United States Fire Insurance Company (U.S. Fire) to Sports and Recreation Providers Association, of which GEF was a named insured member.

During the April 20, 2017 concert, the plaintiff, Barbara Hoffpauir, suffered injuries to her left knee and right ankle when she missed the final step of a stairway and fell down. On April 2, 2018, she filed a petition for damages, naming as defendants the Commission, the Lafayette Consolidated Government, and the University of Louisiana at Lafayette. The petition did not name GEF as a defendant.

On August 7, 2018, the Commission filed a third-party demand against U.S. Fire, alleging that as an additional insured under the commercial general liability policy issued to GEF, U.S. Fire had a duty to both defend and indemnify it relative to Mrs. Hoffpauir's claim against it. It alleged that despite amicable demand, U.S.

Fire failed to assume these obligations; thus, it breached its insurance contract with GEF and the Commission. Accordingly, the Commission alleged that it was entitled to, in addition to defense and indemnity, the court costs and attorney fees it expended in defending itself against Mrs. Hoffpauir's claim, as well as penalties and attorney fees based on U.S. Fire's bad faith denial of its obligations under the insurance policy.

After answering the Commission's third-party demand, U.S. Fire moved for partial summary judgment, arguing that it had no duty to defend the Commission because Mrs. Hoffpauir failed to allege in her petition that it was liable for the acts or omissions of GEF, as required by the additional insured endorsement contained in the policy. In response, the Commission moved for summary judgment and/or alternatively, for declaratory judgment, arguing that U.S. Fire had both a duty to defend and indemnify it because it qualified as an additional insured under the subject policy.

Following a hearing on the cross motions, the trial court rendered oral rulings, denying U.S. Fire's motion for partial summary judgment and granting the Commission's motion for summary judgment and alternatively for declaratory judgment. A written judgment was rendered on October 28, 2019. At the request of U.S. Fire, the trial court designated the October 28, 2019 judgment as a final, appealable judgment. Thereafter, U.S. Fire perfected this appeal.

On appeal, U.S. Fire asserts the following assignments of error:

1.  The district court erred in granting the Commission summary judgment on the duty to indemnify, as that issue is premature and non-justiciable because liability has not yet attached to any purported insured under the U.S. Fire policy.

2.  The district court erred in denying U.S. Fire summary judgment and granting the Commission summary judgment on the issue that U.S. Fire owes a duty to defend the Commission because, under Louisiana's Eight-Corners Rule, the Commission is neither a named nor an additional insured under the policy at issue.

2

3. Under the Eight[-]Corners Rule, the district court erred in relying on any evidence (such as affidavits or deposition testimony) other than the U.S. Fire policy at issue and Plaintiff Barbara Hoffpauir's Petition for Damages in granting the Commission summary judgment on U.S. Fire's duty to defend the Commission.

## OPINION

Summary judgment is a procedural device used when there is no genuine issue of material fact. *Murphy v. Savannah*, 18-991 (La. 5/8/19), 282 So.3d 1034; La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgment *de novo* "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate[,]" i.e., "whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Wright v. La. Power & Light*, 06-1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; La.Code Civ.P. art. 966(A)(3).

Typically, the interpretation of an insurance policy presents a question of law, which can be properly resolved through a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." *Bernard v. Ellis*, 11-2377, p. 9 (La. 7/2/12), 111 So.3d 995, 1002.

In *Williams v. University of Louisiana Lafayette*, 19-753, 19-711, pp. 3-4 (La.App. 3 Cir. 4/22/20), 297 So.3d 1045, 1048-49, *writ denied*, 20-1008 (La. 11/4/20), 303 So.3d 641 (alteration in original), this court laid out the rules pertaining to contract interpretation:

"The interpretation of an insurance policy is normally a question of law." *Armenia Coffee Corp. v. Am. Nat'l Fire Ins. Co.*, 06-409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253, *writ denied*, 06-2983 (La. 2/16/07), 949 So.2d 422. Questions of law are reviewed de novo "without deference to the legal conclusions of the courts below." *Durio v. Horace Mann Ins. Co.*, 11-84, p. 14 (La. 10/25/11), 74 So.3d 1159,

3

1168. As to questions of law, "the standard of review of an appellate court is simply whether the court's interpretive decision is legally correct." *Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C.*, 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474 (citing *Glass v. Alton Ochsner Med. Found.*, 02-412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, *writs denied*, 02-2977, 02-3018 (La. 3/14/03) 839 So.2d 36, 37). "[I]f the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Id.* (citing *Pelleteri v. Caspian Group Inc.*, 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230).

> "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "The parties' intent as reflected by the words in the policy determine the extent of coverage." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So.2d 759, 763. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. The words are "given their generally prevailing meaning." La. C.C. art. 2047. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. C.C. art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. C.C. art. 2049.

> "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *La. Ins. Guar. Ass'n*, 93-0911, 630 So.2d at 763.

*Spencer v. Chevron Corp.*, 16-174, pp. 6-7 (La.App. 4 Cir. 9/28/16), 202 So.3d 1055, 1058-59 (alteration in original).

4

## *Duty to Defend*

In its second assignment of error, U.S. Fire argues that the trial court erred in finding that it owed a duty to defend the Commission against Mrs. Hoffpauir's suit because under the eight-corners rule the Commission is neither a named insured nor an additional insured under the policy at issue. It further argues, in its third assignment of error, that pursuant to the eight-corners rule, the trial court erred in relying on any evidence other than the insurance policy and Mrs. Hoffpauir's petition in rendering a judgment in the Commission's favor. As these arguments are related, we will address them together.

The law pertaining to an insurer's duty to defend was laid out in *Maldonado v. Kiewit Louisiana Co.*, 13-756, 13-757, pp. 11-12 (La.App. 1 Cir. 3/24/14), 146 So.3d 210, 218-19:

> Under Louisiana law, the duty to defend is broader than the duty to indemnify. *See Henly v. Phillips Abita Lumber Co.*, 2006-1856 (La.App. 1st Cir.10/3/07), 971 So.2d 1104, 1109. The issue of whether a liability insurer has a duty to defend a civil action against its insured is determined by application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. *Id.*

> The insurer's duty to defend suits brought against its insured is determined by the factual allegations of the injured plaintiff's petition with the insurer being obligated to furnish a defense unless it is clear from the petition that the policy unambiguously excludes coverage. *Henly*, 971 So.2d at 1109. Assuming the factual allegations of the petition are true, if there could be both (1) coverage under the policy, and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. *Id.* Additionally, the factual allegations of the petition are to be liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured. *Id.*

> If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. The most recently amended complaint provided to the insurer must be examined to determine whether there is a duty to defend. When uncontroverted facts preclude the possibility of a duty to indemnify, the duty to defend ceases and the duty to indemnify is negated. *See Allstate*

5

*Ins. Co. v. Roy*, 94-1072 (La.App. 1st Cir.4/7/95), 653 So.2d 1327, 1333, *writs denied*, 95-1121, 95-1215 (La.6/16/95), 655 So.2d 339; *Pylant v. Lofton*, 626 So.2d 83, 87 (La.App. 3d Cir.1993), *quoting Veillon v. U.S. Fire Ins. Co.*, 590 So.2d 1368, 1371 (La.App. 3d Cir.1991).

Based on the foregoing law, we agree with U.S. Fire's argument that with regard to the duty to defend, the trial court could only consider the four corners of Mrs. Hoffpauir's petition and the four corners of U.S. Fire's policy. Because we find that a duty to defend exists under U.S. Fire's Additional Insured – Managers or Lessors of Premises endorsement, we will limit our review to that endorsement, which provides, in part, as follows:

### ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . . .

A. **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured [the Commission], but only with respect to liability for "bodily injury", property damage" or "personal and advertising injury" caused by the ownership, maintenance or use of that part of the premises leased to [GEF] and subject to the additional exclusions[.]

Pursuant to a plain reading of the endorsement, U.S. Fire's policy applies only when liability is sought to be imposed upon the Commission because of bodily injury resulting from the ownership, maintenance, or use of that portion of the Cajundome that was leased to GEF. U.S. Fire would have us interpret the endorsement to mean that the Commission is an additional insured "but only with respect to liability *caused by Generation's ownership, maintenance, or use* of the premises leased to Generation." However, that is not how the endorsement reads. Had U.S. Fire intended that outcome, it could easily have added "Requesting Named Insured Member's" before "ownership, maintenance or use" to indicate that the Commission

6

was an additional insured but only with respect to liability caused by GEF's ownership, maintenance, or use of the premises leased to GEF.

In *Bossier Plaza Associates v. National Union Fire Insurance Company of Pittsburg*, 35,741 (La.App. 2 Cir. 4/3/02), 813 So.2d 1114, the second circuit, in interpreting a similar additional insured endorsement, held that a commercial general liability policy issued to an insured/lessee excluded coverage for the additional insured/lessor because the accident at issue occurred beyond that part of the premises leased to the lessee. The endorsement in that matter provided:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to *liability arising out of the ownership, maintenance or use of that part of the premises leased to you* and shown in the schedule and subject to the following exclusions[.]

*Id.* at 1117.

The court held that the policy at issue unambiguously excluded coverage for the lessor because the subject accident occurred on an icy sidewalk, which was under the control of the lessor, rather than in the office space leased by the lessee. Conversely to the facts in *Bossier Plaza*, the accident in this matter occurred within the Cajundome arena, which the license agreement described as the premises leased to GEF.

Based on the clear and unambiguous language of the endorsement, we find that the parties intended the Commission to be covered under the policy for liability resulting from bodily injury caused not only by GEF's negligence but also resulting from the ownership, maintenance, or use of the premises leased to GEF. Thus, in order to find that the Commission is entitled to a defense under U.S. Fire's policy, we must find that Mrs. Hoffpauir's petition does not unambiguously exclude the possibility of coverage for liability caused by the Commission's ownership, maintenance, or use of the premises leased to GEF.

7

We note that Mrs. Hoffpauir's original petition asserted, among other allegations, the following specifics:

1. "The Cajundome Commission, Lafayette Consolidated Government, and the University of Louisiana at Lafayette . . . operate the Cajundome for profit as a public venue for concerts, shows, sporting events, and conventions, private events and sells food, beverages, and other merchandise."

2. "At all times pertinent hereto, on or about April 20, 2017, Cajundome hosted a performance by Danny Gokey, the Unspoken, and the Casting Crowns."

3. "At all times pertinent hereto, on or about April 20, 2017, Barbara Hoffpauir attended the performance of Danny Gokey, the Unspoken, and the Casting Crowns at the Cajundome."

4. "At all times pertinent hereto, during an intermission, Barbara Hoffpauir went to the public restroom at the Cajundome."

5. "Barbara Hoffpauir began to descend Cajundome stairs leading to the restroom."

6. "As Barbara Hoffpauir descended the stairs, she used the hand rail [sic]."

7. "As Barbara Hoffpauir descended the stairs, the steps were dark and poorly lighted."

8. "In the process of descending the stairs, Barbara Hoffpauir could not see the last step, fell, injured her left knee, tore the meniscus on her left knee, and broke her right ankle."

9. "Alternatively, in the process of descending the stairs, Barbara Hoffpauir fell, broke her right ankle, injured her left knee and tore the meniscus of her left knee because of a defect in the stairs and lighting that made the area unreasonably dangerous, which was reasonably foreseeable."

10. "The Accident and Injuries complained of herein were caused by the individual and/or concurrent fault of the Cajundome, the Cajundome Commission, Lafayette Consolidated Government, and the University of Louisiana at Lafayette and its and/or their servants, employees and agents[.]"

More specifically, Mrs. Hoffpauir alleged the acts related to the Commission's ownership, maintenance, or use of the premises:

8

a.   Failing to properly construct aisles, passageways, floors, walkways, stairs, handrails, and lighting of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir;

b.   Failing to properly light aisles, passageways, floors, walkways, and stairs of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir;

c.   Failing to remedy a defect or unreasonably dangerous condition of the aisles, passageways, floors, walkways, stairs, handrails, and lighting of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir;

d.   Providing aisles, passageways, floors, walkways, stairs with defective surface area;

e.   Providing handrails that were defective;

f.   Using ineffective illumination of the aisles, passageways, floors, walkways, stairs, and handrails of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir;

g.   Failing to remedy a defect or unreasonably dangerous condition of the aisles, passageways, floors, walkways, stairs, handrails, and lighting of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir after having actual or constructive knowledge of the defect or condition;

h.   Failing to properly light aisles, passageways, floors, walkways[,] and stairs of the Cajundome that presented an unreasonable risk of harm to Barbara Hoffpauir;

i.   Failing to take reasonable and adequate steps to protect Barbara Hoffpauir from the defects and condition of the Cajundome that caused damage;

j.   Failing to warn of the defects and conditions of the Cajundome;

k.   Failing to exercise reasonable care while in control of the Cajundome;

l.   Failing to do what should have been done under the circumstances.

The allegations of Mrs. Hoffpauir's petition clearly lay out a theory of liability against the Commission based on the defective condition of the stairs, handrails, and lighting in that portion of the premises leased to GEF. Accordingly, because the Commission is covered under U.S. Fire's policy as an additional insured and Mrs.

9

Hoffpauir's allegations bring her claim within the scope of that coverage, we find that U.S. Fire owes a duty to defend the Commission against her suit. Therefore, we affirm the judgment of the trial court granting summary judgment in favor of the Commission and denying partial summary judgment in favor of U.S. Fire.

## Duty to Indemnify

In its final assignment of error, U.S. Fire asserts that the trial court erred in finding that it owed a duty to indemnify the Commission, arguing that this issue is premature and non-justiciable because liability has not yet attached to any purported insured under its policy. In granting judgment in favor of the Commission the trial court ruled that "[t]he defense, indemnity attorney fees and costs incurred by the Cajundome Commission as prayed for in its Third-Party Demand shall be undertaken by United States Fire Insurance Company up to its policy limits." However, we find that the trial court erred in awarding the Commission indemnity under the facts at issue.

In *Suire v. Lafayette City-Parish Consolidated Government*, 04-1459, 04-1460, 04-1466, p. 17 (La. 4/12/05), 907 So.2d 37, 51, the supreme court stated:

> We find that the City's and Dubroc's claim for defense under the indemnity agreement is premature under settled law, as these parties have not yet sustained any compensable loss. This court has observed that an indemnity agreement is a "specialized form of contract which is distinguishable from a liability insurance policy." *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La.1987). An indemnitor is not liable under an indemnity agreement until the indemnitee "actually makes payment or sustains loss." *Id.* Thus, this court has held that "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Id.*; *Morella v. Bd. of Comm'rs of Port of New Orleans*, 2004-0312 (La.App. 4 Cir. 10/27/04), 888 So.2d 321, 325.

The lawsuit here is far from its conclusion, and liability has not yet been determined. Thus, the cause of action for indemnification for costs and attorney fees

10

is premature. Moreover, the indemnity clause contained in the November 17, 2016 license agreement provides:

> The foregoing indemnity, hold free and harmless and assumption of legal liability shall not extend to any claims arising from (a) any negligence or willful misconduct of any of the Licensor Parties, or their respective agents, employees, representatives or contractors including, without limitation, Licensor's maintenance or use of the Facilities or (b) any structural or premises related defects of the Facilities.

Thus, depending on the ultimate fault determination, U.S. Fire may not owe indemnification to the Commission. Accordingly, we reverse the judgment of the trial court granting summary judgment in favor of the Commission on this issue and deny the same.

## DECREE

For the reasons set forth, the judgment of the trial court, denying partial summary judgment in favor of United States Fire Insurance Company, finding that it owed a duty to defend the Cajundome Commission against the plaintiff's petition from the inception of the lawsuit through the plaintiff's amending petition adding Generation Exodus Foundation as a party, is affirmed. The judgment of the trial court granting summary judgment in favor of the Cajundome Commission, requiring United States Fire Insurance Company to indemnify the Cajundome Commission for costs and attorney fees up to its policy limits, is reversed. The appeal costs in this matter total $4,621.11. Thus, we assess both parties $2,631.56 in appeal costs. La.R.S. 13:5112.

## AFFIRMED IN PART AND REVERSED IN PART.