988 So.2d 82 (2008)
CITY FIRST MORTGAGE CORP., Appellant,
v.
Lewis BARTON and Native Country Broadcasting & Productions, Inc., Indian River County, Florida, Piling Products, Inc., William B. and Jane Boswell Robinson, Barker Electric Air Conditioning and Heating, Inc., Storch, Hansen & Morris, P.A. n/k/a Storch & Morris, P.A., The Terminal Marketing Company, Inc., Marshall Enterainment Insurance, Inc., and all other parties in possession, Appellees.
No. 4D06-4419.
District Court of Appeal of Florida, Fourth District.
July 16, 2008.
Rehearing Denied August 29, 2008.
*83 Jane Kreusler-Walsh of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, and Fred L. Kretschmer, Jr., of Brennan & Kretschmer, Vero Beach, for appellant.
H. Michael Mu๑iz of Buckingham, Doolittle & Burroughs, LLP, Boca Raton, for appellee/cross-appellant.
MAY, J.
A dispute between a lender and borrower over the insurance proceeds from a destroyed oceanfront property brings this appeal before the court. The lender argues the trial court erred in applying the unclean hands doctrine to postpone foreclosure of the mortgage after the borrower defaulted and also erred in its determination of damages. It also argues that the trial court erred in awarding damages to the borrower for a violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[1] on the borrower's counter-claim. On cross-appeal, the borrower argues that the trial court erred in allowing the lender to foreclose because it had not paid consideration for the assignment of the mortgage. We reverse in part.
*84 Long before the current dispute arose, the borrower defaulted on a promissory note with Wachovia, which held a mortgage on the property. Wachovia filed a foreclosure action in 2001, but the borrower and Wachovia entered into a settlement agreement. That agreement contained a stipulation for entry of a foreclosure judgment and sale of the property if the borrower failed to pay a stipulated sum by a date certain. The agreement also provided that Wachovia's mortgage would be declared superior to two other mortgages held by one of the borrower's companies.
As the date certain approached, the borrower was unable to find a lender to pay off the mortgage. He placed an ad in a newspaper, which was answered by a mortgage broker. The broker negotiated a loan with the current lender, City First Mortgage Corp., but not in time for the borrower to pay off the Wachovia loan. The borrower then filed for bankruptcy to admittedly stall the foreclosure sale long enough to finalize the deal with the current lender, which he was able to do.
The borrower now had to deal with the new lender. The new loan had terms designed to offset the obvious risk. Aside from an origination fee of 5%, the $900,000, thirty-year loan had an interest rate of 10.99%, and default rates at the maximum allowed by law. It was a "hard-equity" loan based only on the appraised value of the collateral property. Failure to make a payment within four days of the due date would result in a default, allowing the lender to declare the entire unpaid principal balance and all accrued interest due immediately.
The borrower missed the first payment on November 1, 2003, prompting the lender to send a certified demand letter to the address provided in the loan application. The letter advised the borrower that he had defaulted on his loan obligations, and all legal remedies would be pursued if he failed to pay the arrearage with interest and fees by November 25th. The borrower failed to respond. When the borrower missed the December 1, 2003, payment, the lender filed a foreclosure action and a lis pendens.
The borrower again enlisted the broker's services, this time to negotiate with the lender and find alternative financing to pay off the loan. The lender advised the broker that it was concerned about the debt and that the default interest rate was now 25%. After some discussion, the lender's representative agreed to an 18% default interest rate and the broker negotiated a reduction in attorney's fees for the pending foreclosure. The broker asked the lender for a figure to bring the loan current.
The lender advised the broker that $48,816.50 was needed to reinstate the mortgage through February 29, 2004. The borrower provided a certified check in that amount, albeit late, which the lender accepted and cashed a few days later. Although the borrower had been promised a letter with the breakdown of the funds and reinstatement of the loan, the lender failed to provide the letter as promised. Two weeks later, the lender sent a stipulation to the borrower showing an additional $15,414.97 owed to bring the loan current. The borrower refused to sign the stipulation, and the following week the lender advised the borrower that, because no agreement had been reached, the lender was proceeding with the foreclosure.
The borrower contacted the lender nearly two months later and was advised that his account was in arrearage for March and April in the amount of $19,984.18, including late fees. The lender requested that funds be paid by April 15, 2004, to avoid further collection expenses. The *85 borrower did not submit the requested funds until May 27, 2004.
The lender responded to the payment by advising the borrower that the monies would be applied to his indebtedness, but unless they reached a written agreement, the lender would continue to proceed with foreclosure. The borrower submitted another check for $19,984.18 on June 27th, but no written agreement was ever reached and the foreclosure proceedings continued.
Subsequently, the mortgaged property suffered substantial damage as a result of the 2004 hurricanes.[2]
The borrower asserted several affirmative defenses to the foreclosure action and filed counter-claims, most of which the trial court found to be unsupported by the evidence. However, the trial court found that the doctrine of unclean hands prevented the lender from foreclosing on the property until July 1, 2004, due to the misrepresentations made by the lender on the amount necessary to bring the loan current, the acceptance of additional monies paid by the borrower, and the lender's failure to provide the borrower with a letter bringing the loan current and to discharge the lis pendens. The court also found these same facts supported a violation of FDUTPA.
While disallowing the foreclosure as of November 2003, the trial court did ultimately allow for the foreclosure because the borrower again defaulted on the note and mortgage by failing to make timely payments from July 1, 2004, through the final judgment. The trial court found the lender entitled to the full amount under the promissory note and mortgage, as well as attorney's fees. The court ordered payment of the $900,000 principal, plus accrued interest since July 1, 2004, less past payments and escrows. On the FDUTPA counter-claim, the trial court awarded $312,009.46 to the borrower as a setoff against the lender's award. That payment was the equivalent of the total amount of interest owed the lender from July 1, 2004, through the final judgment less payments and escrows.
The lender makes three main arguments with several sub-parts. First, the trial court erred in finding the lender had unclean hands and was precluded from foreclosing on the property until July 2004. Second, the trial court erred in its calculation of damages due to the borrower's default. And third, the court erred in awarding damages for a violation of FDUTPA. We find error in the court's decision on the FDUTPA counterclaim and in its calculation of damages, but affirm in all other respects.
By the terms of the note and mortgage, the lender had a right to declare the borrower in default four days after his first missed payment. LRB Holding Corp. v. Bank of Am., N.A., 944 So.2d 1113, 1114 (Fla. 3rd DCA 2006) (citing David v. Sun Fed. Sav. & Loan Ass'n, 461 So.2d 93 (Fla.1984)). A lender can be estopped from foreclosing on an accelerated basis, however, where the borrower establishes that the lender has unclean hands. See Knight Energy Servs., Inc. v. Amoco Oil Co., 660 So.2d 786, 789 (Fla. 4th DCA 1995).
Because the resolution of the unclean hands defense is predicated upon the trial court's factual findings, and those findings in this case are supported by competent, substantial evidence, we are compelled to *86 affirm the trial court's refusal to foreclose and accelerate the loan until July 1, 2004. See, e.g., Pelle v. Glantz, 349 So.2d 732 (Fla. 3d DCA 1977). However, those findings do not support, nor is there competent, substantial evidence to support, the court's damages award for violation of FDUTPA.
The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." ง 501.204(1), Fla. Stat. (2005); Smith v. 2001 S. Dixie Highway, Inc., 872 So.2d 992, 993 (Fla. 4th DCA 2004). "A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006), review denied, 962 So.2d 335 (Fla.2007).
Here, the borrower neither alleged nor proved a recoverable loss under FDUTPA. See Smith, 872 So.2d at 994. The borrower alleged and the trial court found that the lender's "representations and nondisclosures" resulted in the borrower's inability to refinance the loan. However, a plaintiff may recover only "actual damages" incurred "as a consequence of a violation of the statute." Id. The lender suggests, and we agree, that the borrower failed to establish any damages caused by the lender's misrepresentations. While the borrower asserted that he obtained a loan commitment and was unable to close on it because of the failure to bring the loan current, he produced no testimony or executed documentation to corroborate his claim. "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." Butland, 951 So.2d at 873.
Moreover, even if the record contained evidence supporting the borrower's speculation as to why the new bank terminated its loan offer, it would be insufficient to establish damages under FDUTPA, which provides for recovery only of "actual damages," which cannot include consequential or special damages. Smith, 872 So.2d at 994; ง 501.211(1); see Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 263 (Fla. 2d DCA 2004). For these reasons, we reverse that part of the final judgment that awarded $312,009.46 to the borrower on his FDUTPA counter-claim.
We also find error in the trial court's failure to award the lender interest from the inception of the loan. While the trial court determined that the lender was not able to foreclose the mortgage until July 1, 2004, the borrower still owed interest for the entire life of the loan. Smiley v. Manufactured Hous. Assocs. III Ltd., 679 So.2d 1229, 1232 (Fla. 2d DCA 1996). The original interest rate should be applied from the inception of the loan through June 30, 2004, and the default rate from July 1, 2004 through the final judgment. We therefore reverse and remand the case to the trial court to recalculate the amount of interest owed to the lender.
Reversed and remanded for proceedings consistent with this opinion.
STEVENSON and GROSS, JJ., concur.
NOTES
[1] ง 501.204(1), Fla. Stat. (2005).
[2] Insurance proceeds are currently being held in escrow awaiting the outcome of this litigation.