MAX N. TOBIAS, JR., Judge.
 

 | ,This is an appeal by Ohm Lounge, L.L.C. (“Ohm Lounge”) from a judgment ordering its eviction from the premises leased from the Royal St. Charles Hotel, L.L.C. (“RSC Hotel” or “hotel”) where Ohm Lounge operated a lounge/bar. For the following reasons, we affirm the trial court’s judgment of eviction.
 

 FACTS AND PROCEDURAL HISTORY
 

 On 23 January 2007, RSC Hotel and Ohm Lounge entered into a Lease Agreement entitled “Gross Lease of Commercial Property” (the “Lease”). The Lease provided for a seven-year term with two “Renewal Terms,” of approximately 800 square feet of commercial space situated immediately adjacent to the lobby on the first floor of the RSC Hotel, which is located in the 100 block of St. Charles Avenue in New Orleans. The Lease required Ohm Lounge to pay RSC Hotel $1,500.00 per
 
 *473
 
 month until 31 December 2007, and then $2,000.00 per month for the period extending from 1 January 2008 through 31 December 2013.
 

 After renovating the leased area, including removing and/or preserving artwork located on the premises, Ohm Lounge opened for business as a lounge in the latter part of 2007. Pursuant to the Lease terms, Ohm Lounge paid its monthly rental obligation and did not breach the financial obligations of the Lease. On 241 July 2008, RSC Hotel caused Ohm Lounge to be served with a five-day notice to vacate the premises issued by First City Court of the City of New Orleans in the matter entitled
 
 Royal St. Charles Hotel, LLC v. Ohm, LLC.
 
 In response, Ohm Lounge filed the instant suit seeking a declaratory judgment, specific performance, and damages. RSC Hotel timely filed its answer that contained a reconventional demand and a request for eviction based upon Ohm Lounge’s default of the Lease by operating it premises as a “nightclub” and creating a public nuisance.
 

 During the four-day eviction proceedings, RSC Hotel maintained that Ohm Lounge was operating its business in derogation of the Lease by playing excessively loud music and creating a public nuisance. The trial judge heard testimony from numerous hotel guests complaining of disrupted sleep, inability to sleep, and overall dissatisfaction with the hotel due to the loud noise emanating from Ohm Lounge. The trial judge also heard testimony from several hotel employees attesting to the difficulties experienced in conducting hotel business at the front desk during certain hours as a result of the loud music.
 

 After considering all of the evidence and evaluating the credibility of the witnesses in light of that evidence, the trial judge determined that the actions of Ohm Lounge in connection with the noise and nuisance complaints were incompatible with RSC Hotel’s business and were in violation of the Lease warranting eviction. Specifically, the trial court ruled that Ohm Lounge’s actions created a nuisance or annoyance to the hotel in violation of Section 22 of the Lease, entitled “Compliance with Laws, No Nuisance, No Residential Use,” which states, in pertinent part, that Ohm Lounge shall comply with all laws related to the use, maintenance, safety, and occupancy of the leased premises and that Ohm Lounge “shall not do or permit anything to be done in the leased premises that |,swould be a nuisance or annoyance to other tenants” of the RSC Hotel. Based upon Ohm Lounge’s breach of the Lease, the trial court granted RSC Hotel’s Motion for Eviction.
 

 It is from this judgment that Ohm Lounge appeals assigning the following errors: (1) the trial court erred in finding that Ohm Lounge conducted its business in such a way as to create a nuisance or annoyance to RSC Hotel in violation of the Lease; (2) the trial court failed to allow William Stoner to testify as a fact and/or expert witness on behalf of Ohm Lounge; and, (3) the trial court failed to address the cure provision in the Lease.
 

 STANDARD OF REVIEW
 

 In reviewing a trial court’s findings of fact, appellate courts employ a “manifest error” or “clearly wrong” standard of review.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are more reasonable.
 
 Id.
 
 Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or
 
 *474
 
 clearly wrong.
 
 Id.
 
 Moreover, when findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Canter v. Koehring,
 
 283 So.2d 716, 724 (La.1973).
 
 See also Pelleteri v. Caspian Group Incorporated,
 
 02-2141, pp. 6-7 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230, 1234-35.
 

 | ¿Regarding issues of law, the standard of review of an appellate court is simply whether the court’s interpretive decision is legally correct.
 
 Glass v. Alton Ochsner Medical Foundation,
 
 02-0412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, 405. Accordingly, if the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court.
 
 Pelleteri,
 
 02-2141, p. 7, 851 So.2d at 1235.
 

 DISCUSSION
 

 In its first assignment of error, Ohm Lounge avers that the trial court committed reversible error in finding that it conducted its business in such a way so as to permit a nuisance or annoyance to exist at the leased premises in violation of the Lease. According to Ohm Lounge, prior to the execution of the Lease, it presented representatives of RSC Hotel with a business plan that would meet the hotel’s stated vision of providing its guests with a consistent amenity in the form of a lounge/bar. Other than the testimony of William Blatty, owner of Ohm Lounge, and Robert Brunet, its general manager, no evidence was adduced at the hearing establishing that this business plan, which was introduced into the record, was ever actually received by anyone affiliated with RSC Hotel. Glen Smith, an owner of the hotel at the time Ohm Lounge opened, testified that he never saw a business plan and does not actually believe such a plan existed. Nonetheless, in its purported business plan, Ohm Lounge set forth its intended hours of operation for both weekday and weekend nights, respectively, with the weekend hours extending until 6:00 a.m. on Saturday and Sunday mornings. The business plan also stated Ohm Lounge’s intention of hiring local and guest disc jockeys to provide music and entertainment services for its patrons. In essence, Ohm Lounge contends that |sRSC Hotel knew what it was getting into when it executed the Lease for the lounge/bar— that is, that the lounge would be open until the wee hours of the morning on weekends coupled with loud disc jockey music — and that, at all relevant times, Ohm Lounge’s business operations were consistent with the hotel’s vision as stated at the time the Lease was executed.
 

 According to Ohm Lounge, RSC Hotel was satisfied and even encouraged Ohm Lounge’s business plan during the lounge’s initial months of operation with no complaints and that it was only after Warren Reuther assumed control over the management of the hotel that Ohm Lounge began to receive any notices of deficiencies from RSC Hotel personnel concerning the manner in which Ohm Lounge operated its business. Ohm Lounge further avers that Mr. Reuther, who allegedly had an acrimonious relationship with the hotel’s prior management, purposefully set into place a series of activities designed to “get rid of’ Ohm Lounge solely because he did not like its business operation. Ohm Lounge argues that it is simply the “victim of a dysfunctional corporate environment.”
 

 
 *475
 
 While Ohm Lounge concedes the music in its lounge was often loud and that complaints of noise from RSC Hotel guests and personnel were occasionally received, it contends that it complied with each request to turn the music level down. Ohm Lounge contends the evidence establishes that, upon receiving a noise complaint, representatives of the lounge would personally meet with the complaining guest and, if necessary, pay for the guest’s hotel room. According to Mr. Blatty, owner of Ohm Lounge, it was the responsibility of the hotel to communicate any and all complaints with regard to Ohm Lounge to himself, Jenny Tramuta, an Ohm Lounge manager, or Mr. Brunet, general manager of the lounge, in order that Ohm Lounge could promptly and appropriately respond. Mr. Blatty [^testified that Ohm Lounge was not aware of the majority of the noise complaints cited by RSC Hotel at the eviction hearing, as it only received a noise complaint approximately every six to eight weeks. Ohm Lounge contends that RSC Hotel’s failure to notify it of the several noise complaints it cited effectively denied Ohm Lounge the opportunity to address the alleged specific complaints and; therefore, Ohm Lounge should not be held accountable.
 

 In addition to the complaints of excessively loud noise emanating from Ohm Lounge, RSC Hotel claimed that Ohm Lounge permitted unsafe conditions to exist on the premises, which caused a public nuisance in derogation of the Lease. In support of this contention, RSC Hotel presented evidence of an altercation occurring in January 2009. Ohm Lounge argues that the evidence failed to confirm that the altercation involved Ohm Lounge patrons or that the altercation even occurred on the leased premises. Regarding the other incidents that were cited by RSC Hotel at the eviction hearing, specifically incidents allegedly occurring on 25 December 2008 and 7 February 2009, respectively, Ohm Lounge argues that it presented testimony showing that these were mere incidents and not even altercations at all. On behalf of Ohm Lounge, Mr. Blatty testified that Ohm Lounge maintained a strict business policy of removing patrons causing problems from the leased premises and that it provided security guards and bathroom attendants during all hours of operation and front door personnel to check identification to properly ensure the safety of its patrons and the guests of RSC Hotel.
 

 Ohm Lounge avers that the evidence presented at the hearing established that it operated its business in accordance with the terms of the Lease and with its purported business plan as communicated to RSC Hotel when the Lease was 17executed. Consequently, Ohm Lounge argues the trial court erred when it determined that RSC Hotel met its burden of establishing that Ohm Lounge permitted an annoyance or nuisance to exist in violation of the Lease warranting eviction. We disagree.
 

 Our review of the record shows that it is replete with testimony from both hotel employees and guests evidencing numerous complaints made to Ohm Lounge concerning excessively loud music emanating from the lounge/bar that continuously disrupted the business operations of RSC Hotel. Contrary to the assertions of Ohm Lounge, these noise complaints pre-dated Mr. Reuther’s assuming control of RSC Hotel, thereby contradicting Ohm Lounge’s theory that the noise complaints were fabricated or exaggerated to perpetuate a scheme to evict Ohm Lounge. Additionally, Mr. Reuther testified at trial that he was amenable to having Ohm Lounge continue its business in the lobby of the hotel as long as they reduced the volume of music to a reasonable level and operated the lounge with the “laid back, wine loft type feel” atmosphere that Ohm Lounge
 
 *476
 
 initially represented to RSC Hotel at the time it was negotiating the Lease.
 
 [1]
 

 Michelle Reuther, general manager of the hotel, testified that nearly every weekend between 3:00 a.m. and 5:00 a.m., she was contacted by the front desk agent and/or guests from the second to the tenth floor of the hotel concerning complaints of loud noise coming from Ohm Lounge. She received additional complaints from hotel guests during check out at the time of their departure. Introduced into evidence were numerous emails and other correspondence spanning the period from June 2008 through February 2009, wherein Ms. Reuther |8expressed to Ohm Lounge representatives the disruptive and adverse effect the untenable noise was having on RSC Hotel’s operation and its guests. The record also reflects that these emails and correspondence were discounted or largely ignored by Ohm Lounge management. Additionally, Ms. Reuther referred to several guest portfolios corroborating her testimony regarding the intolerable noise generated by Ohm Lounge and the guests’ dissatisfaction with RSC Hotel. Ms. Reuther further testified concerning lost revenue suffered by RSC Hotel due to Ohm Lounge’s establishment and the excessively loud music resulting in guests’ dissatisfaction.
 

 Numerous employees of the hotel testified during the two phases of the eviction proceedings substantiating Ms. Reuther’s testimony regarding the numerous noise complaints received from hotel guests. In many instances, the guests complained of their inability to sleep due to the excessively loud noise coming from Ohm Lounge. Often RSC Hotel would attempt to accommodate these guests by moving them to other available rooms in the hotel. The front desk agents also expressed the difficulty they experienced in performing their job functions such as checking guests in and out of the hotel, taking reservations over the phone, their inability to hear the telephone ring, or generally being unable to converse at the front desk due to the loud noise emanating from the bar.
 

 Several of RSC Hotel’s employees testified that on many occasions they would ask the staff of Ohm Lounge to lower the volume of the music, which request would on occasion initially be momentarily heeded, and then within a short |flperiod of time, the volume would steadily be increased. In this regard, Ohm Lounge manager, Mr. Brunet, testified that despite the hotel’s requests to lower the volume, he was the one responsible for determining what constitutes a reasonable volume level. Additionally, Mr. Blatty testified that even if Ohm Lounge agreed to turn the volume of music down, it would not be to the level desired by RSC Hotel.
 

 In the case at bar, the trial judge obviously made credibility determinations, finding that the testimony of RSC Hotel’s witnesses was more credible than the testimony of Ohm Lounge’s witnesses. Based on these credibility determinations, coupled with the glut of complaints received from hotel guests and hotel employees spanning over many months, we find no manifest error in the trial court’s finding that the noise emanating from Ohm Lounge created a nuisance disruptive to the business operations of RSC Hotel in violation of Section 22 of the Lease. Accordingly, we find this assignment of error is without merit.
 

 In its second assignment of error, Ohm Lounge argues the trial judge
 
 *477
 
 committed reversible error by not allowing William Stoner to testify during the eviction proceeding as an expert or fact witness on their behalf. In addition to asking this court to consider what Mr. Stoner would have stated had he been allowed to testify at the hearing, Ohm Lounge is asking this court to consider Mr. Stoner’s report that it attached to its appellate brief. It is well-settled that “evidence not properly and officially offered and introduced cannot be considered, even if physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.”
 
 Denoux v. Vessel Management Services, Inc.,
 
 07-2148, p. 6 (La.5/21/08), 988 So.2d 84, 88. When the trial judge rules the evidence is inadmissible, a proffer (offer of proof) can be made. La. C.C.P. art. 1636. Indeed, the purpose of mandating the trial court to allow the excluded evidence to be proffered is so that “the testimony (whatever its nature) is available for appellate review.”
 
 McLean v. Hunter,
 
 495 So.2d 1298, 1305 (La.1986). It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error.
 
 Ritter v. Exxon Mobile Corp.,
 
 08-1404, p. 9 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 546.
 

 In the case at bar, Ohm Lounge sought to call Mr. Stoner as an expert and/or fact witness on its behalf. Following an in chambers discussion regarding the matter, which discussion was not made a part of the record, the trial court ruled that it was not going to allow Mr. Stoner’s testimony at the hearing, but would allow the testimony to be proffered. The record is devoid of any such proffer by Ohm Lounge. Accordingly, Ohm Lounge is precluded from raising this issue on appeal.
 
 See also Barham, Warner & Bellamy, L.L.C. v. Strategic Alliance Partners, L.L.C.,
 
 09-1528, p. 2 n. 2 (La.App. 4 Cir. 5/26/10), 40 So.3d 1149, 1151.
 

 In its final assignment of error, Ohm Lounge contends the trial court failed to address the Lease’s cure provision and failed to allow Ohm Lounge to cure any “violation” of or “failure” to comply with the Lease. We disagree.
 

 The Lease provides that an Event of Default will occur if there is no cure after ten days. “Event of Default” is defined in Section 23 of the Lease as follows:
 

 (d) ... Lessee violates or fails to comply with any of its obligations under this Lease when this compliance is due, and this failure continues for 10 days after notice by ^Lessor to Lessee of this failure (provided that if two such failures occur during any twelve-month period and if Lessor gives Lessee notice of the failure on each occasion, then an Event of Default will occur immediately, and without notice or opportunity to cure, if during the same twelve-month period, Lessee again violates or fails to comply fully with the same or any other provision of this Lease)....
 

 The record contains a surfeit of evidence that, dating back to as early as October 2007, and commencing in earnest in February 2008, RSC Hotel repeatedly notified Ohm Lounge of the numerous complaints it was receiving from its guests regarding excessively loud music coming from the Ohm Lounge. The record indicates that RSC Hotel first put Ohm Lounge on notice of noise issues beginning on 11 October 2007, and then again on 18 June 2008 and 15 July 2008, with no efforts made by Ohm Lounge to eradicate the problem. In contrast, Ohm Lounge presented no evidence showing any concrete efforts it made to promptly alleviate or eradicate the nuisance it created at the hotel by allowing the excessively loud noise to blare from its
 
 *478
 
 establishment other than paying for a guest’s hotel room and momentarily reducing the level of music only to turn it back up again.
 
 [2]
 
 While evidence was submitted regarding the suggestion of possibly erecting a plexi-glass wall separating the lounge from the lobby of the hotel, this effort did not occur until many months after the noise complaints had commenced and well after ten days following receipt of notice of a violation as required by the Lease. Additionally, no evidence was presented at the hearing showing that any testing or analysis had been conducted to ensure that the erection of such a plexi-glass wall 112would actually abate the critical noise problem. Pursuant to Section 23 of the Lease, RSC Hotel was not required to afford Ohm Lounge with the opportunity to cure after having already provided it with notices of two violations and no subsequent attempts made by Ohm Lounge to cure. Accordingly, pursuant to the terms of the Lease, we find that following the notice given to Ohm Lounge on 15 July 2008 regarding the nuisance it created by the excessively loud noise — which was the third notice given to Ohm Lounge of a Lease violation with no attempt at cure within the same twelve-month period— such actions on the part of Ohm Lounge constituted an Event of Default triggering Section 24 of the Lease, which permitted RSC Hotel to pursue eviction proceedings against Ohm Lounge.
 
 [3]
 

 The record further confirms that on 18 August 2008, 19 September 2008, and 16 October 2008, respectively, RSC Hotel provided Ohm Lounge with additional notices of noise issues affecting its guests’ satisfaction and business operations. We agree with RSC Hotel that, given these three violations of the Lease, Ohm Lounge was no longer entitled to a right to cure under the express terms of the Lease. The only attempt to cure that Ohm Lounge was required to make was to reduce the volume of music to a reasonable level that was mutually acceptable to the lounge and the hotel during all hours of operation. This it simply chose not to do. Ohm Lounge’s third assignment of error is without merit.
 

 Accordingly, the judgment of the trial court granting RSC Hotel’s Motion to Evict is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Glen Smith, one of the owners of RSC Hotel during the Lease negotiation period, testified that during the negotiations, he was assured that the lounge would not operate as a discotheque or night club, but rather, would operate as a "wine bar” with a "laid back feel.”
 

 [2]
 

 . We do not find that paying for a guest’s hotel room was a ''cure” for the noise problem Ohm Lounge created at the hotel. While such an act may have placated the guest, the noise issues continued as evidenced by the ongoing complaints as testified to in the record. Additionally, temporarily lowering the volume of the music in an effort to momentarily appease the hotel’s manager and desk clerk also does not constitute a ’’cure” for the noise problem, for as soon as the volume was raised, the problem returned.
 

 [3]
 

 . Section 24 of the Lease, entitled "Lessor's Default Remedies,” permits RSC Hotel, upon the occurrence of an Event of Default, as described in Section 23, to "(iv) enforce any or all other rights or remedies provided in this Lease or permitted by law.”