# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 19-753 consolidated with CW 19-711

**PATRICK WILLIAMS**

**VERSUS**

**UNIVERSITY OF LOUISIANA LAFAYETTE, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20176895
HONORABLE JULES DAVIS EDWARDS, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and Van H. Kyzar, Judges.

**REVERSED AND RENDERED.**

**Robert A. Mahtook, Jr.**
**Julie I. Faulk**
**Mahtook & LaFleur**
**P. O. Box 3089**
**Lafayette, LA 70502-3089**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Lafayette Consolidated Government**

**Andre Collins Gaudin**
**Scott Owen Gaspard**
**Burglass & Tankersley, LLC**
**5213 Airline Drive**
**Metairie, LA 70001-5602**
**(504) 836-0422**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **100 Black Men of Greater Lafayette, Inc.**

**Michael J. Remondet, Jr.**
**Teddy Paul Sorrells**
**Sarah E. Stephens**
**Jeansonne & Remondet**
**P.O. Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANT/THIRD-PARTY PLAINTIFF/APPELLEE:**
    **The Cajundome Commission**

**Tracy Peter Curtis**
**Curtis Lee Hollinger, Jr.**
**The Glenn Armentor Law Corp.**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Patrick Williams**

**Sidney W. Degan, III**
**Travis Louis Bourgeois**
**Degan, Blanchard & Nash**
**400 Poydras St., #2600**
**New Orleans, LA 70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **The Burlington Ins. Co.**

**Brian W. Harrell**
**Grant Herrin**
**Degan, Blanchard & Nash**
**5555 Hilton Ave, Ste. 620**
**Baton Rouge, LA 70808**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **The Burlington Ins. Co.**

**Jazmine A. Torres**
**Assistant Attorney General**
**P. O. Box 94005**
**Baton Rouge, LA 70804**
**(225) 326-6300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State of Louisiana, Board of Superv. for Univ. of La. System**

**EZELL, Judge.**

Burlington Insurance Company (hereinafter BIC) appeals the decision of the trial court below denying its petition for declaratory judgment and motion for summary judgment and granting those motions in favor of the Cajundome Commission. For the following reasons, we hereby reverse the decision of the trial court and render judgment in BIC's favor.

Though the case before us involves the interpretation of an additional insured endorsement in an insurance policy written by BIC, the matter arises from a slip and fall accident that occurred at the Cajundome. 100 Black Men of Greater Lafayette (hereinafter 100 BMGL) rented the Cajundome Convention Center to hold its Father of the Year Banquet in June of 2017. 100 BMGL's contract with the Cajundome required that it purchase food and beverage service through the Cajundome, as well as housekeeping and cleaning services. The Cajundome retained full control of those services at all times. The lease further provided that 100 BMGL must procure insurance which named the Cajundome as an additional insured, which 100 BMGL did through BIC.

On the night of the banquet, Cajundome employees serving beverages spilled pitchers of liquid on the floor. The Cajundome's employees created and knew of the hazard and, before it could be completely cleaned up, Patrick Williams slipped on the liquid and injured himself. Mr. Williams sued the Cajundome and 100 BMGL, among others, for his injuries. The Cajundome filed a third-party suit against BIC, alleging that it was covered under the "additional insured" endorsement contained in the BIC policy issued to 100 BMGL. Later, as 100 BMGL had no connection with the food and beverage service and had no other

possible source of liability for the fall, it was dismissed via summary judgment without objection.

The Cajundome filed a motion for summary judgment and petition for declaratory judgment seeking defense, indemnity, and coverage under the BIC policy. BIC responded with a motion for summary judgment and petition for declaratory judgment of its own, seeking dismissal and a judgment declaring it owed no coverage or duty to defend. The trial court below ruled that, under the language of the endorsement, the Cajundome was acting "on behalf of" 100 BMGL when it committed its acts of negligence and, therefore, it was an additional insured under the BIC policy and owed coverage. From that judgment, BIC appeals.

On appeal, BIC asserts two assignments of error: that the trial court erred in granting the Cajundome's motion for summary judgment and petition for declaratory judgment, and that it erred in denying its own similar motions. We agree.

A moving party is entitled to summary judgment when it shows that there are no genuine issues of material fact and that it "is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). Summary judgment is favored by law and provides a vehicle by which "the just, speedy, and inexpensive determination" of an action may be achieved. La.Code Civ.P. art. 966(A)(2).

> Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Greemon v. City of Bossier City*, 2010-2828 (La. 7/1/11), 65 So.3d 1263, 1267; *Samaha v. Rau*, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882; *Allen v. State ex rel. Ernest N. Morial–New Orleans Exhibition Hall Authority*, 2002-1072 (La. 4/9/03), 842 So.2d 373, 377. In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to

determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So.2d 764, 765. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Id.* at 765–66.

On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *See* La. C.C.P. art. 966(D)(1); *see also Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006.

*Larson v. XYZ Ins. Co.*, 16-745, pp. 6-7 (La. 5/3/17), 226 So.3d 412, 416.

Whether an insurance policy provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. *Crosstex Energy Servs., LP v. Texas Brine Co., LLC*, 17-895 (La.App. 1 Cir. 12/21/17), 240 So.3d 932, *writ denied*, 18-145 (La. 3/23/18), 238 So.3d 963.

"The interpretation of an insurance policy is normally a question of law." *Armenia Coffee Corp. v. Am. Nat'l Fire Ins. Co.*, 06-409, p. 6 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 253, *writ denied*, 06-2983 (La. 2/16/07), 949 So.2d 422. Questions of law are reviewed de novo "without deference to the legal conclusions of the courts below." *Durio v. Horace Mann Ins. Co.*, 11-84, p. 14 (La. 10/25/11), 74 So.3d 1159, 1168. As to questions of law, "the standard of review of an appellate court is simply whether the court's interpretive decision is legally correct." *Ohm Lounge, L.L.C. v. Royal St. Charles Hotel, L.L.C.*, 10-1303, p. 4 (La.App. 4 Cir. 9/21/11), 75 So.3d 471, 474 (citing *Glass v. Alton Ochsner Med. Found.*, 02-

412, p. 3 (La.App. 4 Cir. 11/6/02), 832 So.2d 403, *writs denied*, 02-2977, 02-3018 (La. 3/14/03) 839 So.2d 36, 37). "[I]f the decision of the trial court is based upon an erroneous application of law rather than on a valid exercise of discretion, the decision is not entitled to deference by the reviewing court." *Id.* (citing *Pelleteri v. Caspian Group Inc.*, 02-2141 (La.App. 4 Cir. 7/2/03), 851 So.2d 1230).

> "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02–1637, p. 3 (La. 6/27/03), 848 So.2d 577, 580. "Interpretation of a contract is the determination of the common intent of the parties." La. C.C. art. 2045. "The parties' intent as reflected by the words in the policy determine the extent of coverage." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93–0911 (La. 1/14/94), 630 So.2d 759, 763. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. art. 2046. The words are "given their generally prevailing meaning." La. C.C. art. 2047. However, "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." La. C.C. art. 2048. "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. C.C. art. 2049.

> "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. art. 2050. "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *La. Ins. Guar. Ass'n,* 93–0911, 630 So.2d at 763.

*Spencer v. Chevron Corp.*, 16-174, pp. 6-7 (La.App. 4 Cir. 9/28/16), 202 So.3d 1055, 1058-59 (alteration in original).

The clause at issue reads (italic emphasis ours):

> **Section II – Who Is An Insured** is amended to include as an additional insured the person or organization shown in the Schedule [the Cajundome] *arising out of their financial interest in you* but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf.

4

The trial court below held that the Cajundome was acting on behalf of 100 BMGL; therefore, it was covered under the policy for the damages its employees caused. We find that it would be absurd to read the endorsement language at issue as providing the Cajundome with indemnification against *its own acts of negligence*. The trial court's reading of the clause would allow full coverage for the Cajundome as an additional insured where it was the sole agent of fault and where there was no longer any viable allegation of liability on behalf of the named insured, 100 BMGL.

The Cajundome retained exclusive control over food, beverage, and housekeeping services. Its staff was acting on behalf of the Cajundome itself in providing catering services for profit, not acting in any way as agents or otherwise on behalf of 100 BMGL. The Cajundome's staff merely rendered catering services as contracted. While the accident at issue arose out of 100 BMGL's rental of the Cajundome's premises, the accident was not caused by any fault on 100 BMGL's part. That 100 BMGL was free from fault in this matter is not contested in any way. There is no allegation that any liability of the Cajundome to the Plaintiff comes through 100 BMGL, and the accident was caused by the Cajundome alone. 100 BMGL was dismissed on summary judgment without objection, ensuring that the Cajundome cannot be held liable for any acts or omissions relating to the group. As the Cajundome can have no exposure to liability for any acts of 100 BMGL, it has no "financial interest" in 100 BMGL under the policy language, preventing the policy from providing coverage.

Our view is bolstered by the reasoning behind a similar case, *Maldonado v. Kiewit Louisiana Co.*, 13-756, 13-757 (La.App. 1 Cir. 3/24/14), 146 So.3d 210.[1] Though the language of the policies are not exact matches, we find the language of the policy at issue mirrored the language in *Maldonado* enough to guide our thinking.

There, the language of the additional insured endorsement read:

A. **Section II—Who is an Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule above with whom you agreed in a written contract or written agreement to provide insurance such as is afforded under this policy, **but only** to the extent that such person or organization is liable for "bodily injury", "property damage" or "personal and advertising injury" ***caused by your acts or omissions*** *or the acts or omissions of those acting on your behalf*[.]

*Maldonado*, 146 So.3d at 219 (alterations inserting party names omitted)(italic emphasis ours).

The *Maldonado* court found that the plain wording of the endorsement showed that the policy applied only when liability was sought to be imposed upon the additional insured because of something the named insured was alleged to have done or failed to do, despite similar "on your behalf" language as the policy here. Thus, for the additional insured to have coverage under the policy, the *Maldonado* court ruled the petition at issue must allege that the additional insured's liability was caused by the named insured's negligence. Similarly, we find that it is clear from the policy language that the parties only intended the Cajundome to be covered if it could be cast in liability, vicariously, for the fault of 100 BMGL or its

---

[1] *Maldonado* did not deal with coverage specifically, but rather a duty to defend. However, because the policy language is so similar, we find that the reasoning holds, especially since the duty to defend is even broader than the duty to indemnify under Louisiana law. *Henly v. Phillips Abita Lumber Co.*, 06-1856 (La.App. 1 Cir. 10/3/07), 971 So.2d 1104.

other agents. Again, the Cajundome did not act as an agent for 100 BMGL by providing them contracted food services.

The *Maldonado* court further ruled that when plaintiffs amended their petition, deleting any allegations of fault against the named insured, the petition ceased to allege any claim that could be covered by the additional insured policy endorsement. This is also like the matter at hand in that, when 100 BMGL was dismissed on summary judgment, there could no longer be any claim against that group that the Cajundome could be liable for. Absent any allegations of fault on 100 BMGL's part, there can be no coverage for the Cajundome as an additional insured under the endorsement especially here, especially for its own acts of negligence.

Finally, "[i]n the absence of an express and unequivocal statement that a party is to be indemnified for that party's own negligence, the contract of indemnification will not be construed to create such an obligation." *Boykin v. PPG Indus., Inc.*, 08-117, p. 6 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 843, *writs denied*, 08-1635, 08-1640 (La. 10/31/08), 994 So.2d 537 (citing *Perkins v. Rubicon, Inc.*, 563 So.2d 258 (La.1990)). We can find no policy language allowing coverage for claims against the Cajundome for its own negligence or intentional acts as the endorsement at question contains no such statement. Thus, under the express and unequivocal language of that agreement, BIC's indemnification obligation extended only to those situations where the Cajundome's liability to a third party was caused by 100 BMGL's negligence or that of another actor acting on behalf of the group, not that of the Cajundome itself. Accordingly, the trial court erred in finding coverage for the Cajundome's own negligence under the additional insured policy endorsement.

For the above reasons, we hereby reverse the decision of the trial court granting declaratory and summary judgments in favor of the Cajundome. We further render judgment granting declaratory and summary judgment in favor of BIC, holding it owes no defense, indemnity, or insurance coverage to the Cajundome under the policy at issue under the facts of this case. All claims against BIC are hereby dismissed. Costs of this appeal are hereby assessed against the Cajundome.

**REVERSED AND RENDERED.**