# Third District Court of Appeal
## State of Florida

Opinion filed May 27, 2026.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D23-1002
Lower Tribunal No. 16-17123-CA-01

————————————

## Bryan G. Barrish,
Appellant/Cross-Appellee,

vs.

## Interiors by Steven G., Inc., etc.,
Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Vivianne Del Rio, Judge.

Assouline & Berlowe, P.A., and Eric N. Assouline and Francisco J. Barreto, for appellant/cross-appellee.

Law Offices of Robert P. Frankel, P.A., and Robert P. Frankel (Plantation), for appellee/cross-appellant.

Before MILLER, LOBREE and BOKOR, JJ.

BOKOR, J.

This appeal and cross-appeal concern a pricing dispute between a customer, Bryan G. Barrish (Barrish), and an interior design company, Interiors by Steven G., Inc. (Steven G.). After a bench trial, the trial court entered final judgment in favor of Barrish for $31,358.72. Barrish appealed, claiming that the trial court erred in dismissing claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Steven G. cross appealed, claiming that the trial court's setoff of $103,134.00 in Barrish's favor as a credit for defective wood flooring relied entirely on an impermissible settlement communication.[1] For the reasons explained below, we affirm the orders on appeal in all respects.

## I.

In 2012, Barrish, a part-time resident of Miami-Dade County, contracted with Steven G. for design and decorating services for Barrish's condominium unit, and entered into a written agreement. The company invoiced Barrish for approximately $1.5 million for design work, furnishings, and finishes to the condo. Barrish alleges that the company never completed the contracted scope of work and that there were multiple defects in the work completed. Barrish also alleges that the company failed to produce

---

[1] This court has jurisdiction over the subject appeal and cross-appeal as taken from a final judgment, pursuant to Florida Rules of Appellate Procedure 9.110 and 9.030(b)(1)(A).

documentation that Barrish was receiving the agreed-upon prices for the work and that the 35% professional services fee was improperly calculated.

Barrish claimed breach of contract by failing to complete the scope of work (count one), and violation of FDUTPA (count two), alleging that Steven G. overcharged for certain items and violated the agreed-to price structure. Barrish further alleged that the company engaged in price inflation and concealed the actual prices of items, shipping, and handling costs, so that it could maximize its 35% professional services fee. Barrish did not deny that he approved and paid all the invoices at issue.

Steven G. moved to dismiss for failure to state a cause of action. The company argued as to the breach of contract claim that the parties' agreement did not include a requirement for a full accounting or to provide all underlying vendor documentation. The company argued that the FDUTPA claim failed to allege the elements of causation and damages.

In 2016, before the trial court's ruling on the motion to dismiss, Barrish sought production of documents related to Steven G.'s suppliers and vendors and the prices paid by the company for the various furnishings and items shipped and installed in Barrish's condominium unit. The company moved for a protective order, which the trial court granted "at this juncture."

3

The trial court denied Steven G.'s motion to dismiss as to the breach of contract claim but granted the motion without prejudice as to the FDUTPA claim. Barrish filed an amended complaint, adding allegations of actual damages to the FDUTPA claim. Steven G. moved to dismiss the re-pled FDUTPA claim and asserted a counterclaim for monies owed.

In 2017, Barrish moved the trial court to compel production of certain documents and responded to the company's motion for protective order and to quash. The trial court denied the motion with prejudice in a detailed order, finding that "[t]hose portions of the amended complaint that mention plaintiff's desire to verify that defendant 'was not engaging in price gouging' do not establish an actionable breach of contract nor a basis to discover baseline information to investigate how much profit a businessman makes under a given contract for goods/services." The trial court then sua sponte revisited its prior ruling on the motion to dismiss the amended FDUTPA claim and concluded that the allegations in the amended complaint once again failed to state a cause of action and dismissed that count with prejudice. The trial court explained that the FDUTPA claim impermissibly attempted to recast a breach of contract claim as "unfair and/or deceptive business practices."

Litigation continued over the next four years. In 2021, Barrish once again filed a renewed motion to compel production of documents regarding

4

certain invoices. The company responded that the motion was an untimely and procedurally improper motion for rehearing of the 2017 ruling. The trial court denied Barrish's motion to compel production of documents. Barrish then filed a petition for writ of certiorari to this court, which was denied. (Case No. 3D22-0368).

The parties proceeded to a bench trial from March 27 through April 1, 2023. Barrish's attorney for the previous six years of litigation withdrew, and replacement counsel asserted a new theory of damages on the one remaining count for breach of contract. This new theory (not raised in the amended complaint) argued that even if the company was entitled to charge its 35% commission, it could not receive that commission for its work here unless Barrish also received a 40% discount off the list price of everything ordered, instead of the selected items indicated in the contract. Barrish presented his claim for damages and stated that he was seeking $103,000 plus interest, as well as the 35% mark-up charged in a credit for wood flooring that was promised to him by Steven G., and $318,000 in damages for overcharging under the agreement. Steven G. responded that Barrish should be precluded from presenting a damages theory at trial that conflicted with what he pleaded. The trial court agreed with the company and limited Barrish's arguments to his claim for credit on the wood flooring and precluded

5

the $318,000 in damages Barrish claimed as overcharges related to the pricing language.

The trial court ultimately concluded that Barrish prevailed on his claim for defective wood floors and that the company prevailed on its counterclaim for monies owed. The final judgment awarded Barrish a credit for the wood flooring and did not award a return of the 35% commission he paid to Steven G. for the flooring. The May 8, 2023 final judgment further stated that Steven G. was entitled to $71,775.28 on its counterclaim, "but this amount is set-off in full by the Credit owed to Barrish." After applying the set-off, Barrish was awarded $31,358.72 and post-judgment interest. Barrish appeals and the company cross-appeals.

## II.

We review the trial court's legal determinations de novo and the trial court's findings of fact for competent, substantial evidence. Tylinski v. Klein Auto., Inc., 90 So. 3d 870, 873 (Fla. 3d DCA 2012) (citing Craigside, LLC v. GDC View, LLC, 74 So. 3d 1087 (Fla. 1st DCA 2011)). In an appeal from a bench trial, "the trial judge's findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous." Negron v. Resol. Life Holdings, Inc., 271 So. 3d 137, 137 (Fla. 3d DCA 2019) (quoting

6

<u>Universal Beverages Holdings, Inc. v. Merkin</u>, 902 So. 2d 288, 290 (Fla. 3d DCA 2005)). And to the extent that an appellant claims that the trial court improperly excluded evidence, "it is axiomatic that" the failure to "proffer a foundation that would have established the relevance of the excluded evidence . . . precludes appellate consideration of the alleged error." <u>Palos v. State</u>, 306 So. 3d 331, 334 (Fla. 3d DCA 2020) (citation modified).

**III.**

First, we examine whether the trial court erred by dismissing with prejudice the FDUTPA claim in the amended complaint. A FDUTPA claim requires allegations of "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." <u>Kia Motors Am. Corp. v. Butler</u>, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008). Barrish alleges that Steven G.'s convoluted pricing structure constituted a deceptive act or unfair practice. Under FDUTPA, an "unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." <u>PNR, Inc. v. Beacon Prop. Mgmt., Inc.</u>, 842 So. 2d 773, 777 (Fla. 2003) (quotations omitted); <u>see also</u> <u>Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.</u>, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (stating that deception occurs if there is a "representation, omission or practice that is likely to mislead the consumer acting reasonably in the

7

circumstances, to the consumer's detriment" (quoting <u>S.W. Sunsites, Inc. v.</u> <u>Fed. Trade Comm'n</u>, 785 F.2d 1431, 1435 (9th Cir. 1986))). Here, the relevant contract language sets forth how the charged prices were calculated and for which items. And for other phases of the project, the contract mandated itemized proposals requiring Barrish's preapproval. The contract explains, for example, that the discount offered on designated items was based on "Showroom List Price" which "is not a market-defined price." The contract further provided that "any other costs or charges will be specifically set forth in Invoices, which you will receive and each will be subject to your prior approval." And Barrish reviewed, approved, and paid the invoices without objection. Barrish fails to identify any conduct that conceivably rises to the level of a deceptive act or unfair practice.

Even if Barrish became disillusioned with the bargain struck in the contract, without more, that doesn't rise to the level of deception. Barrish's amended complaint asserted that he "understood" that certain prices were not necessarily market price (which is explicitly stated in the contract), and that there would be markups of vendor and labor costs. To establish a deceptive practice under FDUTPA, "[a] plaintiff must show that a reasonably objective person in the same circumstances would have been deceived." <u>Angelo v. Parker</u>, 275 So. 3d 752, 755 (Fla. 1st DCA 2019). But by Barrish's

own allegations, he expected a markup, and he didn't expect market pricing. Presuming that Barrish is at least as sophisticated as an objective consumer, his own understanding of the contract belies deception sufficient to ground a FDUTPA claim.

In the context of reversing class certification of a FDUTPA claim against a car dealership, our sister court explained that "[s]tanding alone, the mere existence of an overcharge does not establish a violation of FDUTPA." Id. There, the contract at issue established that certain fees were estimated, and that the purchaser would be responsible for any shortage. See id. But the putative class plaintiff "had to allege that the Dealership acted in a way that was unscrupulous, oppressive, unethical, or immoral or in a way likely to mislead the class members to their detriment." Id. (quotation omitted). Similarly, here, we discern no way that Steven G.'s alleged acts in compliance with the express terms of the contract rose to the level of "unscrupulous, oppressive, unethical, or immoral" conduct "likely to mislead" a consumer. Id. The contract explicitly put Barrish on notice that the discount would be taken from a price not tied to market price, and even there, only on designated items. For the other phases of the project, Barrish received a written estimate requiring assent before proceeding. The fact that Steven G.

9

may still have made a profit on the discounted items hardly seems unscrupulous or misleading.

Barrish's complaint also fails to state a claim under the second and third prongs of FDUTPA. FDUTPA provides for an award of actual damages. Barrish provides no way to discern actual damages under his theory of the case. See Tri-County Plumbing Servs., Inc. v. Brown, 921 So. 2d 20, 22 (Fla. 3d DCA 2006) (explaining that "actual damages" under FDUTPA requires a measurement of "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties"). Barrish argues that because of Steven G.'s alleged price gouging, Barrish was overcharged for certain items. And causation and damages would have been shown through the sought-after (but denied) accounting of Steven G.'s actual vendor costs. But the contract contains no language obligating Steven G. to provide Barrish with an accounting of Steven G.'s vendor costs. As mentioned, the contract explicitly provides that the showroom price is not tied to market price. There is likewise no contractual relationship between the showroom price and Steven G.'s wholesale vendor costs. And in any event, Barrish provided no support for how to discern the market price based on Steven G.'s wholesale vendor costs.

FDUTPA's objective standard prevents FDUTPA claims based solely on subjective disappointment or personal disagreement with pricing. "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quotation omitted). The trial court correctly concluded that the portions of the amended complaint alleging price gouging or deceptive billing failed to establish a basis for discovery of Steven G.'s actual costs and failed to ground a FDUTPA claim. Because any amendment would rely on the same legal theory, the trial court did not abuse its discretion in determining that further amendment of the FDUTPA claim would be futile and dismissing such count with prejudice. See GEICO Gen. Ins. Co. v. A & C Med. Ctr., Inc., 357 So. 3d 233, 234–35 (Fla. 3d DCA 2023) ("Refusal to allow amendment of a pleading constitutes an abuse of discretion unless allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile." (citation modified)).

Similarly, Barrish's allegations failed to establish a basis for a breach of contract claim. The contract expressly provides for how Barrish was to be billed. The fact that Barrish, contrary to any contractual requirement, "understood" that Steven G. would provide a full accounting to him so he

11

could determine whether he was being properly charged, fails to provide a basis to allege a breach of contract. This is so because "[a] breach of contract claim is properly dismissed where the plain language of the contract upon which the claim is based unambiguously establishes that the defendant did not breach the duty alleged in the complaint." Washington v. VyStar Credit Union, 51 Fla. L. Weekly D234, 2026 WL 317434, at *4 (Fla. 5th DCA Feb. 6, 2026) (quotation omitted).

## IV.

Next, we examine the cross appeal. Steven G. claims that the trial court erred by finding for Barrish on the flooring credit based on a privileged settlement discussion. See § 90.408, Fla. Stat. ("Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statements made in negotiations concerning a compromise, is inadmissible to prove liability or absence of liability for the claim or its value.").[2] But the record establishes other competent, substantial

---

[2] Arguably, this issue is not properly preserved. The briefs provide no record citation for the trial court's explicit in-court ruling on Barrish's counsel's objection to admission of the May 2014 email into evidence. See, e.g., Carratelli v. State, 832 So. 2d 850, 856 (Fla. 4th DCA 2002) (collecting cases and explaining that "[a] plethora of Florida cases support the notion that a party must obtain a ruling from the trial court in order to preserve an issue for appellate review"). Assuming that the issue is preserved, as explained, competent substantial evidence supports the trial court's findings.

evidence to support the trial court's findings. The May 2, 2014 email memorializing settlement discussions was not the sole evidence showing that Steven G. had offered to give Barrish a credit for the defective wood flooring. For example, the architect, Mr. Chancellor, testified about the June 2015 punch list in evidence, noting that the list indicated "all items listed in wood flooring are N/A as flooring is to be refunded per Steven G." This is corroborated by Steven Gurowitz (the principal of Steven G.), who testified as follows:

> **Q [Barrish's counsel]:** Okay. The next sentence says, I have now confirmed what happened with respect to the wood flooring issues. We offered to do the removal of the total wood flooring at no cost to the client and or credit, you see that?
>
> **A [Steven Gurowitz]:** I did, sir.
>
> . . . .
>
> **Q:** Okay. So, you're saying that the reason you didn't give the credit was because he didn't accept the credit. Okay. Let's talk about that for a second.
>
> **A:** Now, I could tell you, I think my accounting department issued the credit to show good faith and we don't think he accepted that either.

Any admission of the May 2, 2014 settlement communication is therefore harmless because Steven G.'s principal testified at trial he offered the flooring credit. No reasonable probability exists that the May 2, 2014 email, even if erroneously admitted (and even if such objection is preserved),

13

contributed to the verdict. See Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1255 (Fla. 2014) (setting forth test for harmless error).

## V.

For these reasons, we affirm the final judgment and orders on appeal in their entirety.

Affirmed.